## Richmond

## SOUTHALL V. EVANS.

January 16, 1913.

1.  NEW TRIAL—*Death of Judge—Powers of Successor—Verdicts.*—If a trial judge dies or becomes permanently incapacitated to act by reason of sickness, after the jury have rendered a verdict in a case, and pending a motion to set aside the verdict on the ground that it is contrary to the evidence, his successor in office, or the judge appointed to hold his court, is not bound to set the verdict aside simply because he did not preside at the trial before the jury.

2.  NEW TRIAL—*Death of Judge—Powers of Successor—Bills of Exception—How Evidence Supplied.*—A judge designated by the Governor to hold the court of another judge, who has been rendered permanently unable to act, is clothed with every function that pertained to the judge of the court, and is competent to pass upon every case then remaining upon the docket, including a motion to set aside a verdict on the ground that it is contrary to the evidence, so that his decision may be reviewed by the appellate court, although he never heard the witnesses testify, and the verdict was rendered before his designation by the Governor. He may not only have recourse to an unofficial stenographic report of the evidence taken at the trial by a stenographer employed by one of the parties and proved by the stenographer to be substantially correct, but may send for the witnesses to prove the evidence given by them on the trial, and take such other steps and measures as will legitimately and properly inform him of the truth and of the correctness of the bill of exception which he signs.

Error to a judgment of the Corporation Court of the city of Danville in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Julian Meade,* for the plaintiff in error.

*William Leigh,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Evans sued Barker and Southall in the Corporation Court of the city of Danville, and at the April term, 1911, the jury rendered a verdict in favor of the plaintiff for $700, which Southall moved the court to set aside, on the ground that it was contrary to the law and the evidence, which motion the court, presided over by the Honorable A. M. Aiken, took time to consider, but prior to the July term, 1911, and before Judge Aiken rendered his decision upon the motion for a new trial his health became such that he was unable again to hold court, and thereupon Judge Harvey was designated by the Governor of the State to hold the Corporation Court of the city of Danville during Judge Aiken's disability.

At the trial of the case at the April term, at the instance of the defendant, A. M. Southall, a stenographer, took in shorthand the evidence introduced by the plaintiff and the defendant, but did not transcribe it into typewriting at that time, the defendant, Southall, not desiring it. During the latter part of September, 1911, the plaintiff, L. B. Evans, by counsel, requested the stenographer to write out the evidence as taken down at the trial, which was accordingly done, and when the case was called at the October term, 1911, on the motion for a new trial, the defendant, Southall, moved the court to set aside the verdict and to grant him a new trial because the judge then presiding was not present and did not hear the evidence adduced at the trial of the cause and ought not, therefore, to enter

judgment upon the verdict; and thereupon the plaintiff, by counsel, produced the evidence introduced upon the trial of the cause as written out by the stenographer from her notes of the evidence, taken at the time of the trial, as aforesaid, and the stenographer having been brought into court and duly sworn, testified that said evidence was transcribed from the notes taken down by her at the trial; that said transcript was a true transcript of the evidence as shown by her notes; that while several of the questions and answers as shown by her notes were imperfect, she only corrected or filled in said questions and answers where the context clearly showed what was the true meaning of said notes; that she could not tell how many of these imperfections there were, but they were not many and were not material; that in some cases there were omissions, but the context plainly showed to her what the omissions were, so that she had supplied most of the omissions in the transcript of the evidence; that in some cases there were omissions in the transcript which she did not supply, and which were shown by blank spaces in the transcript; that in many instances, where there were omissions, they were caused by her notes being imperfect or imperfectly written, and the next question and answer, which was more clearly and perfectly written, would show what the imperfection was, and in these instances she supplied them; that while she could not swear that the evidence was taken down verbatim, as given by the witnesses on the trial, and that no word was omitted from her notes, she was willing to swear, and did swear, that the evidence, as written out, was substantially as given by the witnesses and substantially correct, and that no material part of the evidence was omitted, and that the evidence as written by her was a substantially correct report of the evidence given at the trial. Thereupon the court decided to consider the evidence as written out and proved by the stenographer, to

which ruling and decision of the court the defendant, by counsel, excepted; and thereupon the court, being of opinion that there was a conflict between the evidence of the plaintiff and defendant, and that the preponderance of evidence was in favor of the plaintiff, overruled the motion of the defendant to set aside the verdict of the jury rendered at the April term, 1911, and entered up judgment on the verdict, to which decision and judgment of the court the defendant, A. M. Southall, excepted; and the case is now before us for review upon a writ of error awarded by one of the judges of this court.

Plaintiff in error contends that the case is controlled by section 3385 of the Code, which provides that "In the trial of a case at law, in which an appeal, writ of error, or supersedeas lies to a higher court, a party may except to any opinion of the court and tender a bill of exceptions, which (if the truth of the case be fairly stated therein), the judge shall sign, and it shall be a part of the record of the case;" his contention being that the bill of exceptions can be signed by none other than the judge who presided at the trial; that he alone saw the witnesses, heard their testimony and the manner in which they gave it in; that not only what the witness said, but the manner in which he said it, is to be considered in passing upon the weight of the evidence.

The authority for a bill of exceptions is derived from section 3385, but the point in the trial had not been reached when Judge Aiken retired from the bench at which a bill of exceptions could have been tendered to him. It is true that he presided when the evidence was submitted to the jury, and to him the motion was addressed to set aside the verdict, but becoming incapacitated by illness further to discharge the duties of his office, the Governor, as provided by law, designated Judge Harvey to preside over the Corporation Court of Danville. He was thereby clothed with

every function that pertained to the judge of the court, and was competent to pass upon every case then remaining upon the docket. As a part of the litigation to be disposed of by him, he found the verdict in the case before us and a motion for a new trial pending. Neither party can deny his jurisdiction to hear and determine that motion. The plaintiff in error invoked that jurisdiction when he demanded that the verdict should be set aside; the defendant in error submitted himself to that jurisdiction when he resisted that motion and asked that a judgment be rendered upon the verdict.

The judge found himself confronted with this dilemma: If he set aside the verdict without sufficient cause, he deprived the defendant in error of a substantial right and benefit which he had obtained; if he refused it without inquiry, he deprived the plaintiff in error of the right to sue out a writ of error from this court. He found that a report of the evidence had been taken down by a stenographer chosen by the plaintiff in error, which had been written out in type at the instance of the defendant in error, and he determined to consult it, so that he might act advisedly and intelligently upon the motion, and not deprive either party arbitrarily of the right to a verdict, on the one hand, and the right to a writ of error on the other. He found, upon further inquiry, that the report was not absoultely accurate, that the stenographer had supplied certain omissions, as appears from a statement of her evidence already given.

It will be observed that the plaintiff in error does not point out the inaccuracies which he claims to exist in that report, but relies upon the proposition that none other than Judge Aiken was competent to pass upon that motion. Had the inaccuracies been pointed out, the court might have found that the stenographic report, while showing verbal inaccuracies, was substantially correct, or, if there

were a material defect of omission or commission, might have resorted to other means of ascertaining the truth, or, in default of additional proof, have found the defect so serious as to have warranted the court in granting the motion for a new trial; but nothing of this sort was resorted to. The facts upon which the court acted are not before us, and there is nothing before us with respect to the motion for a new trial except the sworn statement of the stenographer, that her report was "substantially as given by the witnesses and substantially correct, and that no material part of the evidence was omitted, and that the evidence as written by her was a substantially correct report of the evidence given at the trial." The only fact, therefore, as to the evidence before us, is that the judge of the corporation court acted upon a report of the evidence shown to be substantially accurate, and just what would have been placed before Judge Aiken had his health permitted him to continue upon the bench and to pass upon the motion, and the judge who presided enjoyed every advantage to enable him to pass intelligently upon the motion submitted that Judge Aiken would have had, save and except that he did not see the witnesses and hear them testify. This court constantly passes upon motions for a new trial and grants or rejects them under conditions identical with those which confronted the judge in this case.

The question then to be determined is a question of law. Did the judge, when called on to pass upon the motion to set aside the verdict, have jurisdiction of the subject to grant or refuse that motion and to sign a bill of exceptions, so that his decision might be the subject of review before this court, or was he held down, by defect of jurisdiction, to set aside the verdict and award a new trial?

This precise question has never been before this court, but a case which bears a strong analogy to it in principle is to be found in *Collins* v. *Christian,* 93 Va. 1, 24 S. E. 472.

In that case it was held, that "if, on application for a mandamus to compel a judge to sign a bill of exceptions, he answers that he refused to sign the bill because it did not state the truth of the case, and the relator traverse this answer, an issue of fact is presented, to be determined upon the evidence, whether the bill did correctly set forth the truth of the case," and in that case, when the evidence was presented, the issue of fact was decided against the judge, and a writ of mandamus was awarded to compel him to sign the bill of exceptions which had been tendered.

This case is also reported in 2 Va. Law Register 103, and there is a very interesting note upon it by Judge Burks, from which we shall quote freely, as follows:

In *Page* v. *Clopton* [30 Gratt., 71 Va. 415], cited in the opinion of the court, it is said at p. 428 of the report: 'If a judge, therefore, refuses to sign a proper bill of exceptions, or to proceed to settle the matter of the bill objected to, he may, in either case, be compelled by *mandamus* to act; but if he states in his return to the rule or *mandamus nisi* that the particular bill presented does not contain the truth of the case, and, therefore, he refused to sign it, whether such statement must be taken as conclusive in the proceeding by *mandamus,* or whether it may be traversed and the truth of the bill inquired into and settled one way or the other, are questions which do not necessarily arise in the case before us, as there is no plea to or traverse of the return. The questions are of great importance in practice. They have not been argued in this case, and as it is not necessary to decide them now, we express no opinion upon them. See what is said in Powell on Appellate Proceedings, Ch. 6, sec. 62, p. 256, and High on Extraor. Leg. Rem., Part 1, Ch. 3, sec. 202, p. 159, and cases cited by these authors.'

"The questions thus left open are now decided in the principal case, as we understand it. The answer of the

judge that he refused to sign the two bills of exceptions tendered because they did not contain the truth of the case, was not deemed conclusive, but was permitted to be traversed and evidence taken upon the issue. This would seem to be against the prevailing opinion. In addition to the authorities cited in *Page* v. *Clopton, ubi supra,* see *People, ex rel.* v. *Jameson* (40 Ill. 93), 89 Am. Dec. 337, and note; *Dame* v. *Derby* (Maine), *Id.,* note at p. 740; 14 Am. & Eng. Encyc. Law (1st ed.) and notes at p. 122 *et seq.* The case is one of the first impression in Virginia, and we heartily approve the judgment of the court. Every practitioner knows how difficult it often is to get a fair bill of exceptions from the court. The judge naturally, and perhaps unconsciously, leans too far to his own side of the case; and if his opinion that the bill tendered does not state the truth of the case and, for that reason, he refuses to sign it, cannot be questioned, mandamus is of very little practical value. Yet, there is no other remedy. It is true that in *Powell* v. *Tarry,* 77 Va. 250, where, on a motion for a new trial, the circuit judge, for alleged lack of time and want of memory, refused to certify the evidence on the trial, not being able to certify the facts, the court of appeals held that the refusal was good ground for reversal of the judgment, stating, at p. 263, that 'while *mandamus* will lie to compel a judge to certify the evidence when he shall so refuse, it is also error to so refuse, of which any party injured may complain to this court, and for which this court will reverse the judgment of the court below. It is the right of the suitor to have the evidence certified to this court in a case where the judge refuses to certify the facts proved, on the ground that the evidence is conflicting. To refuse to do so is to deny to the suitor his right of appeal.'

"We respectfully submit that the ruling to the point that the refusal of the judge to certify the evidence is

good ground for reversal of the judgment is against reason and without precedent. How could the appellate court be able to say, upon the record, that the refusal to grant a new trial on an application based upon the ground that the verdict of the jury was contrary to the evidence, was error, when it has neither the facts nor the evidence before it? The presumption is that the judgment complained of is correct, unless and until it is shown by the record to be erroneous, and the burden of showing error is upon the party complaining. It is impossible, in the absence of either facts or evidence, to see that it is wrong. A writ of error brings up the record only, and extrinsic circumstances can be made a part of the record only by bill of exceptions. It is the bill that furnishes the means by which the action of the court below as to such matters can be reviewed by the appellate court."

See also a note by Judge Burks in 9 Va. L. Journal, at pp. 260-261. The whole note is valuable and worthy of careful perusal.

If in the trial of a case, to use the language of section 3385, "a party may except to any opinion of the court, and tender a bill of exceptions," which the trial judge shall refuse to sign because it does not, in his opinion, fairly state the truth of the case, evidence may be taken to refute the position of the judge and he be compelled to sign a bill which is proper by mandamus, it would seem to end the controversy so far as it proceeds upon the idea that the bill of exceptions must reflect the opinion and judgment of the trial court, because in the result he may be, as was the case in *Collins* v. *Christian, supra,* compelled to sign a bill in which in his opinion the case is not fairly stated, but which is shown to be a correct statement of the facts upon an issue joined and evidence heard in support of it.

In other jurisdictions the question has frequently arisen and there is much diversity of opinion upon the subject.

In *Fire and Life Ins. Co. of New York* v. *Heirs of Wilson,* 8 Pet. 292, 8 L. Ed. 949, the Supreme Court of the United States said: "The district judge is mistaken in supposing that no one but the judge who renders the judgment can grant a new trial. He, as the successor of his predecessor, can exercise the same powers, and has a right to act on every case that remains undecided upon the docket, as fully as his predecessor could have done. The court remains the same, and the change of the incumbents cannot and ought not, in any respect, to injure the rights of litigant parties."

In 23 Cyc., at page 567, it is said: "As a general rule a succeeding judge has authority to hear and determine a motion for a new trial in a case heard by his predecessor, where the latter has ceased to preside and departed from the district in which the trial was had, where his term of office has expired, or where he has died. And this power may be exercised by a special judge elected to proceed with the business of the term. A judge under such circumstances must act on the evidence upon which the verdict was founded, which may be ascertained by reference to the notes of the trial judge or by his affidavit, or that of the counsel in the case, by re-examination of the witnesses, or by any other lawful mode."

In *Penn Mutual Life Ins. Co.* v. *Ashe* (C. C. A.), 145 Fed. 596, 7 Ann. Cases, 491, it is said: "Where a judge dies without having determined a motion for a new trial in a cause tried before him, his successor may pass upon the motion, and allow and sign a bill of exceptions, only in case he is furnished with such information, either by stenographic notes or otherwise, as will enable him to do so fairly and intelligently; and if the successor cannot pass fairly and intelligently upon the questions of law and fact presented by the motion, he has authority, apart from the statute, to grant a new trial."

In *Conway* v. *Smith Mercantile Co.*, 6 Wyoming, 327, 44 Pac. 940, 49 L. R. A. 201, it was held, that "Where after overruling a motion for a new trial and granting time within which to prepare and present a bill of exceptions for allowance, and before the presentation of the bill, the trial judge died, and the bill was presented to the court within the time allowed, the successor of the trial judge could settle and sign the bill."

In that case a great number of authorities were carefully considered, among them *Newton* v. *Boodle*, 54 Eng. Com. Law, 795, which is commented upon as follows: "It was held that where a party has lost the benefit of a bill of exceptions tendered to the ruling of a judge at *nisi prius* or at the assizes, by the death of the judge, and without any default on his own part, it is not competent to another judge of the court out of which the record issues to seal the bill of exceptions, and in such a case, where the circumstances warrant it, the court will allow the party to move for a new trial, notwithstanding the proper time for doing so has elapsed. But the rule was granted in order to see if there was evidence to fix one of the defendants on not guilty, as borne out by the notes of the chief justice of the court, who died before the bill was perfected, and it was decided that there was no evidence to connect such defendant with any of the proceedings in trespass, and this was decided upon the notes of the evidence, and the rule was discharged. This ruling and examination into the notes of the judge was tantamount to reviewing the cause on its merits, warranted perhaps under the circumstances, and is apparently a better practice than to leave the party to obtain his new trial in the court below, as a matter of right and of course, owing to the death of the trial judge without certifying to the bill, *for it is manifest that such a course would be a hardship to the prevailing party in the court below, to force him*

*to retry the cause, if there were no reasons for doing so.*
*By granting a new trial, the defendant in error would be*
*put to the time and expense of a retrial of the cause, and*
*this should not be done, unless it appears by an inspection*
*of the record and a re-examination of the issues and the*
*evidence that prejudicial error was committed by the trial*
*court."*

The case of *Penn Mutual Life Ins. Co.* v. *Ashe, supra,*
is the subject of an extensive and instructive note in 7
Ann. Cases, at page 491.

In *Miller* v. *Anheuser,* 4 Mo. App. 436, it is said, that
"In case of the death of the judge who tried the cause, his
successor is not bound to grant a new trial for the sole
reason that he did not preside at the trial; but where the
agreed statement of facts, pleadings, instructions, and all
things else necessary to a determination of the cause are
as fully and completely before him as they were before
his prdecessor, he may sign a bill of exceptions."

In section 213, 1 Thompson on Trials, it is said, that
"Where the judge who presides at the trial becomes sick,
or is otherwise unable to proceed, after the evidence is all
in and the instructions have been given to the jury, the
trial, it has been held, should proceed under a special
judge, before the same jury and without rehearing the
testimony.   Upon this question the Supreme Court of
Arkansas, speaking through Mr. Justice Eakin, says: 'It
is submitted as matter for arrest that the jury were not
discharged upon the election of the special judge, and a
new jury selected.   The jury had heard the evidence and
instructions, and had dispersed to await the argument of
counsel.   There is no reason why this should not be made
under the presiding control of the special judge.   The in-
structions had not been excepted to, and if it had been
important to determine precisely what the evidence had
been, the special judge might in several ways sufficiently

have advised himself of it to have enabled him to regulate the discussion. Upon a difference among the attorneys as to testimony during an argument, it is no uncommon practice to call a witness, not for re-examniation, but to state what he had testified.'"

In *Jones* v. *Sanders,* 103 Cal. 678, 37 Pac. 649, it is held: "Upon a motion for a new trial, it is the duty of the trial court to examine the evidence, even though it be conflicting, and if dissatisfied with the conclusions reached, to grant a new trial. The rule is the same whether the motion is heard by the judge who tried the case, or by some other judge, whose only knowledge of the facts is obtained from the record."

In *Borrowscale* v. *Bosworth,* 98 Mass. 34, the court said: "We can have no doubt that where a party has regularly taken exceptions in a cause, and has lost the benefit of them without fault of his own, a new trial may be granted. He has a right by law to the judgment of the higher court upon the decision by which he feels himself to be aggrieved; and a new trial may be his only remedy."

In *Benson* v. *Hall,* 197 Mass. 517, 83 N. E. 1036, it was said: "If the judge who presided at a trial dies after a motion for a new trial has been filed but before it has been passed upon by him, the motion for a new trial is not to be granted as a matter of right by reason of the death of the judge before whom the case was tried, but, on the contrary, another judge of the same court at a hearing on the motion has the same discretionary power to grant or deny it that the deceased judge had." In the course of the opinion the court said: "It is the defendant's argument that only the judge who presided could act, and that his decease operated as an allowance of the motion. But while the defendant had asked for a review of the trial, and the judge to whom he applied was prevented by death from taking judicial action, the tribunal

of which he was a member survived. The discretionary power of the court had been invoked, and if the great advantage which the parties would have derived from being heard by the judge who presided at the trial had been irretrievably lost, yet the defendant did not withdraw his motion, and, until it had been disposed of, the plaintiff could not obtain judgment. In this situation it was open to either party to make application for a hearing to the court whose members severally were clothed with the same powers, and who possessed the absolute right to hear and determine all matters which remained undecided in the case. It was, therefore, within their discretion, as it had been in his, either to grant or to refuse a second trial."

The precise question before us was decided in *Ott* v. *McHenry*, 2 W. Va. 73, and it was there held that "It is competent for a subsequent judge to hear and determine a motion to set aside a verdict of a jury and grant a new trial, where such motion was made before a preceding judge and left undetermined, but in doing so, he must act upon the evidence upon which the verdict was founded. What that evidence was before the jury may be ascertained by the notes of the judge who presided at the trial, by his affidavit thereof, by a re-examination of the witnesses, by the affidavits of counsel in the cause, or of others who heard and remembered it, or by any other mode that may be lawful as in the proof of any other fact."

In *People* v. *McConnell*, 155 Ill. 192, 40 N. E. 608, it was held, that "Upon the death of the trial judge after verdict and pending a motion for a new trial, before a bill of exceptions is signed, the succeeding judge presiding in the same court has power, and it is his duty, to decide the motion for a new trial, although he has not heard the witnesses testify or seen their demeanor on the stand, and no official or agreed transcript is produced." In the course of the opinion the court said: "Matters not per-

taining to the record proper can only be authenticated and made part of the record by a bill of exceptions, and it therefore follows necessarily that if another judge can act only upon an authenticated record, one of two things must occur: either the court must award a new trial as a matter of course, or the party demanding a new trial be remediless. Without extended discussion of the question, and citation of authorities which may be found, tending to show that the former is the proper course, we are of opinion that under the modern practice in our courts the better rule, and the one sustained by perhaps the weight of more recent authority, is that the succeeding judge, presiding in the same court, has power to decide a motion for a new trial, and to grant or overrule the same, and enter such judgment or order as shall to justice appertain.    *    *    *    The court is required to pass upon and determine the motion for a new trial. The determination is a judicial one, to be made by the court, and not by the particular judge who may, at a particular time, have presided therein. The objection that the particular judge who is asked to pass upon the motion did not see the witnesses or hear them testify, and therefore did not have the means of determining the weight or credit to be given to their testimony, would obtain equally if there was an authenticated record presented to him. If the judge who presided at the trial had pursued a course unusual in practice, and signed a bill of exceptions before disposing of the motion for new trial, thereby making the same a part of the record, it would afford no greater facility, when presented to another judge, for determining the weight and credit to be given to the testimony of the witnesses than would a transcript of the proceedings at the trial proved in any other way. The purpose of all investigation in the courts is to do justice promptly and without unnecessary delay, and the parties litigant and

the public are alike interested in speedy and correct determination of causes. In modern practice full stenographic report is usually made, as was done in this case, and the correctness of the transcript presented to the court of the occurrences at the trial is easily and readily ascertainable.

"We have repeatedly held, and the citation of cases is unnecessary, that in settling a bill of exceptions by the trial judge, he may resort to every legitimate means of ascertaining the correctness of the bill he is called upon to authenticate. He may not only have recourse to the stenographic report, but may send for the witnesses, and take such other steps and measures as will legitimately and properly advise him of the truth, and of the correctness of the bill of exceptions which he signs. The due and proper administration of justice requires that this should be done, rather than to put the parties and the public to the unnecessary expense of a re-trial of the cause. Every facility possessed by the trial judge, except that of personal recollection, is within the power of his successor in office presiding in his place and stead, and no reason can be perceived or exist why the judge to whom the application is made may not in like manner advise himself, and by like means arrive at a correct determination, of what a bill of exceptions should contain. It may well be that the one party or the other may lose the benefit of the superior credit, or the want of credit, of particular witnesses for or against him, by reason of the inability of the court, in passing upon the motion for a new trial, to properly weigh the evidence, in view of their demeanor and appearance upon the witness stand. The intelligent and enlightened judge will know and appreciate this condition, and, as is done in appellate jurisdictions, where the same difficulty exists, will give due and proper weight to the previous findings in the cause."

Briefly recapitulating: there was no exception to any ruling of the court in this case with respect to the admission of evidence or as to instructions to the jury. The only objection noted at the trial was that the verdict was contrary to the law and the evidence. There was a report made of the evidence, not by an official stenographer, an officer unknown to our law, but by a private stenographer, employed and vouched for by the plaintiff in error, who testified that her report is in all respects substantially correct. Had it been incorrect, it was open to the plaintiff in error to point out its defects, and to establish an accurate record of the evidence by resort to all the means open to the court and which are pointed out in the authorities which we have discussed, notably in that of *People* v. *McConnell, supra.* Instead of doing that, the plaintiff in error chose to rely and to plant himself upon the proposition of law that no judge was competent to act except the one who presided at the trial before the jury, and that his successor was bound, without the exercise of discretion, to grant a new trial. After a consideration of the authorities we find that there is diversity among them. The view opposed to that which we have taken is maintained by courts of respectability, and their views are ably presented by Judge Crump, of the Law and Equity Court of the city of Richmond, whose opinion in the case of *Coke* v. *Gordon Motor Company* is reported in 18 Va. L. Reg. at p. 166. We recognize and appreciate the difficulty there so forcibly presented. The plaintiff in error ought not to be deprived of his right to an appeal or writ of error; but on the other hand the defendant in error should not lose the benefit of his verdict by no fault of his own. Our endeavor has been substantially to preserve the rights of both. Had the plaintiff in error seen fit, the evidence of the trial before the jury presented to the court in the stenographic notes might have been corrected, if found

erroneous, and as the succeeding judge found it sufficient to warrant a judgment upon the verdict, he would, of course, not have hesitated to set out the evidence in a bill of exceptions, which would have been the foundation for a petition to this court for a writ of error. In this manner the rights of all parties would have been preserved.

We are of opinion that there is no error in the judgment, which is affirmed.

*Affirmed.*