# Richmond

## CLINTON JOHNSON V. COMMONWEALTH OF VIRGINIA.

November 19, 1945.

Record No. 3005.

Present, All the Justices.

The opinion states the case.

*Percy Carmel* and *William Davis Butts,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *M. Ray Doubles, Assistant Attorney General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

Clinton Johnson, colored, is charged with rape. He was indicted, tried, convicted and sentenced to twenty years confinement in the State penitentiary. That judgment is now before us for review on a writ of error.

The prosecuting witness is a young white woman about twenty years old. She had come to Hampton seeking employment and was working at Langley Field when assaulted.

On the morning of February 18, 1944, at about half-past five, she stood at a bus stop on her way to work and was there accosted by the defendant, who was wearing a make-shift mask and, at the point of a gun (it was probably a toy gun but she did not know it), ordered her not to look around and said: "Start walking and don't start anything or you will get hurt." It was then quite dark. As ordered, she did start walking. Soon afterwards he blindfolded her and put something in her mouth. At his direction, they wandered around for half-hour or more, until he guided her to a cabin. In it she was told to enter and to lie down. She did; he tied her hands with a rope and accomplished his purpose. He then conducted her to another bus stop, took the blindfold off, and told her that she had better meet him there next morning at five o'clock and not to try to start anything. From there she went at once to the sheriff's office and reported this happening. This entry was made on the official blotter:

"A. According to the report here, the complaint was on 2/18/44; time 6:50. A young lady reported that a criminal attack was committed on her by an unidentified colored man in Wythe District, near Ann Wythe Hall. Description: Colored male, twenty, five feet nine, 140. Dark pants—brown—dark overcoat—small tan hat. The brim of this hat was turned up in front and down in back."

Then in company with J. R. Lewis, a county policeman of Elizabeth City county, and H. C. Thompson, Commonwealth's Attorney, she took them to the bus stop from

which she was taken and from there to the place at which she was blindfolded. In view of the fact that the defendant had told the prosecutrix to meet him next morning at five o'clock at the bus stop where he left her, the police officers, among whom was V. T. Jacobs, county officers of said county, stationed themselves in that neighborhood at that time. This was before five o'clock. He had a description of the accused, and when he did appear he fitted perfectly with that description. Jacobs hailed him and asked him where he was going. He said that he was going to work over at a "Punch N' Judy" place in Newport News. He was searched and found to have a toy pistol and told to get into the Jacobs car. He then asked to be taken home that he might tell his mother where he was. He was not taken home, and they started for the sheriff's office. But just as they were turning into it, the car door was opened, and the accused jumped or fell out, ran away and got away. The officers then decided to make a systematic search of what seemed to be a likely neighborhood. Finally they went to the home of the father. In a little cabin there the accused was found by Officer F. B. Paxton. He was then undressed and had been in bed. His people came out and protested against his arrest. In the confusion which followed Officer Jacobs came up, who unhesitatingly identified him as the boy who had escaped from his car on the day before.

The prosecutrix, although blindfolded, was able to identify the room by reason of certain physical facts which she had noticed and by its odor as the room to which she had been taken.

Johnson was then taken to the sheriff's office. He there confessed and signed a written confession. At that time his parents were not permitted to see him. Afterwards, in company with officers, he pointed out the place at which he had accosted the prosecutrix and the line which he had forced her to follow. It tallied with what she had been able to tell. He fixed the room at which the offense occurred as in a shack back of a store and not in the cabin in

which he was found. The shack which he pointed out as being the scene of his offense was found to be padlocked.

When his case came on to be heard, a jury was waived. The presiding judge, John Weymouth, Judge of the Circuit Court of said county, heard the evidence and the argument of counsel, and on April 28, 1944, entered this order:

"This day again came the attorney for the Commonwealth and the accused again was led to the bar of this court in the custody of the jailer; and the court having heard the remainder of the evidence pursuant to adjournment from the 26th day of April, 1944, doth find the accused guilty as charged in the indictment but doth defer the imposition of sentence until a later day.

"Whereupon, the accused by counsel moved the court to subject the accused to a medical examination to determine his mental condition."

Afterwards, but before imposing sentence, Judge Weymouth died, and Judge Jefferson F. Walter, Judge of the 31st Judicial Circuit, was designated to sit as Judge of the Circuit Court of Elizabeth City County. On October 6, 1944, Judge Walter entered this order:

"This day again came the attorney for the Commonwealth and the prisoner was again led to the bar in the custody of the jailer of this court and the court having found the prisoner guilty at the trial of this case on the 28th day of April, 1944, but having deferred the imposition of sentence pending an examination into the sanity of the prisoner, a report of which findings has been filed in this court.

"Whereupon, the defendant by counsel moved the court to dismiss the case for the reason that the accused was being twice subjected to jeopardy and for the reason that the present court was without jurisdiction to impose sentence, which motion the court doth overrule and doth therefore fix the punishment of the defendant, Clinton Johnson, at confinement in the State penitentiary for a term of twenty (20) years."

It was in the light of this evidence that the court found the accused guilty. No other proper judgment was possible.

Since he has been found guilty and is guilty, it but remains for us to determine if there is any good reason why he should not be punished.

Officer Jacobs was the officer from whom the accused had escaped. With other officers he went out to look for him. Among those whom he interviewed was a colored man, George Williams. Williams said: "He asked me did I know any boys around there in that community, and I told him the boy's name next door." Among those named by Williams was Clinton Johnson, who worked at the "Punch N' Judy" shop.

If this be hearsay evidence, then an officer hunting a fugitive from justice must have the fugitive with him when he makes inquiry as to his whereabouts or where he lives. Moreover, there could be no possible prejudice to the accused, for he was already in the custody of Officer Paxton, who was with Officer Jacobs in the search and was later identified by Jacobs.

Next it is said that the written confession of the accused should not have been introduced in evidence; that the accused was an immature youth, terrified and hysterical, who signed this confession because Sheriff Anderson told him that if he did that he might go home. When testifying, he said that he was fourteen and would be fifteen Friday. He was large for his age. A commission was appointed to inquire into his sanity and mentality. It was reported that he was well developed and nourished, of normal physical development for his age, and that he had a "mental age of 11 years, 4 months, and an I. Q. of 79." "As a result of this examination, it is our opinion that this boy is not insane and that he is of sufficient intelligence to be responsible for his acts."

They also reported that he had failed in three grades at school, gone over them and had been promoted to the seventh grade. His testimony given in this case was taken down literally by a stenographer. It, in itself, is inherently evidence of ordinary intelligence.

The sheriff warned the accused that whatever he said might be used for or against him. Johnson then proceeded to tell him how it all happened. The sheriff then called the Commonwealth Attorney's office, which sent down a stenographer. This is the confession as she wrote it and as Johnson signed it:

"I will be fifteen years old in April, 1944. I just walked up to her and took her down to the end of the street. She was standing up beside a post and I walked up to her with a gun. I had the gun in my hand at Dorcester avenue and made her walk down Dale street. I blindfolded her at the end of Dale street. Then walked her around to Rolfe street, then took her to a shack across from that. I do not know what it is used for. I tied her hands up in the shack. This shack is right across from Rolfe street. After I got in the shack she sat down. I pulled her slacks off. She was lying on the floor inside the door. I had intercourse with her after I pulled her slacks off. After I finished I untied her hands. She was still blindfolded and I carried her back to the bus stop and pulled the blindfold off there. This happened around 5:30 or quarter to six A. M., February 18th, 1944.

"I make this statement of my own free will, without any promise of reward or threat of punishment and in the knowledge that whatever I say may be used either for or against me.

CLINTON JOHNSON

"2/19/44."

It is not in the language of the accused but dictated to the stenographer by the sheriff. It was read to him; he read it and said that it was all right and signed it. The sheriff was asked if he promised to let the accused go home if he would sign it, to which he answered: "No, sir, no, sir." That Johnson could read it is demonstrated by the fact that he did read it during the progress of his examination. Anderson said that he saw no pistols in evidence in the office while the accused was being examined, and that

though he was not there all the time, he was in and out, and that the exhibition of pistols was against office rules. Moreover, after the confession was signed, Johnson took the sheriff with him over the line along which he had conducted the prosecutrix, starting at the bus station.

Stress is laid upon the fact that this confession was made by a terrorized child, cut off from his family and friends. Doubtless it was made when he was in fear of the consequences of his act. His physical and mental conditions we have considered.

*Smith* v. *Commonwealth*, 10 Gratt. (51 Va.) 734, was a rape case in which a sentence of death was upheld. Judge Lee, after an extensive examination of this subject, concluding his opinion, said:

"I am by no means insensible to the force of the argument which has been so strenuously urged by the counsel for the plaintiff in error, founded upon the *status* of the prisoner, the extreme ignorance and dependence of that class upon those by whom they are held in service, and the actual state of terror and alarm into which the prisoner was thrown by the intelligence that his guilt had been discovered. * * * But without placing too much stress on this, I think it is a sufficient answer to say that the evidence goes to the jury subject to observation by the prisoner's counsel upon any and every circumstance which may serve to impair its weight or the degree of credit to which it is entitled, and that the jury may disregard it altogether if they shall think the circumstances are such as to deprive it of all weight; but no different rule as to its admissibility can be applied having reference to this particular class of persons without departure on the part of the court from its legitimate province, and an assumption of the power of making law as well as of expounding it."

*Venable* v. *Commonwealth*, 24 Gratt. (65 Va.) 639, 643, was a murder case in which a sentence was upheld:

" * * * A great deal of stress was laid, in the argument of the prisoner's counsel before this court, on the fact proved by Michaels, who took the prisoner to jail, that he, 'the

prisoner, seemed to be frightened and trembling while the officer was taking him to jail, and seemed to be agitated when he got to the jail.' But no degree of alarm or agitation will, of itself, render confessions made during its existence inadmissible," citing *Smith* v. *Commonwealth*, *supra*.

In *Omohundro* v. *Commonwealth*, 138 Va. 854, 121 S. E. 908, the court, after citing the familiar rule that the opinion of a trial judge, hearing a case without the intervention of a jury, is as to facts entitled to the same weight as is a jury's verdict, said that it was for the trial judge to determine whether the confession was voluntary, and not involuntary, because extorted by threat or fear of bodily harm to the accused. See also, *Mullins* v. *Commonwealth*, 113 Va. 787, 75 S. E. 193; also *Upshur* v. *Commonwealth*, 170 Va. 649, 197 S. E. 435, which holds that admissibility of a confession is within the sound judicial discretion of the court.

After the death of Judge Weymouth, which occurred on June 29, 1944, and before a permanent successor had been elected or appointed, Judge Jefferson F. Walter, Judge of the 31st Judicial Circuit, was designated under Code, section 5898, to preside in the Circuit Court of Elizabeth City county. Before that designation, Judge Herbert G. Smith of the Newport News Corporation Court temporarily presided over that court. He entered no order dealing with this subject but told somebody to take a transcript of this evidence to Judge Walter. This was wholly unnecessary and was no more a part of the trial than would have been an act of Judge Walter who went into the clerk's office and found the record of this case in a pigeon hole there and took it out. None of this was any part of the trial, and Code, section 4894, does not apply. Indeed, in *Palmer* v. *Commonwealth*, 143 Va. 592, 130 S. E. 398, it was held that a judge might consider instructions in chambers and hear argument of counsel.

The accuracy of the transcript of evidence taken before and reviewed by Judge Walter is conceded. He had also

before him the report of the commission appointed by Judge Weymouth, which was filed September 12, 1944.

Next it is said that jurisdiction died with the death of Judge Weymouth. Judges are not courts; they are a part of court machinery. Courts live on when the judge dies just as they do when the clerk dies. Their days are not numbered, and it is not certified how long they have to live. Peck and Borden in Augusta county outlived many judges and was actively litigated for more than one hundred years.

In Wharton's Criminal Procedure, 10th Ed., sec. 1871, it is said:

"It has been ruled in Wisconsin that a judge of the Circuit Court may pronounce sentence on a prisoner convicted before his predecessor in office. It was held, however, in Philadelphia, by the United States Circuit Court, that this does not hold when the judge trying the case dies pending a motion for a new trial; but that under such circumstances a new trial will be granted."

In 24 C. J. S. 21, it is said:

"Ordinarily sentence should be pronounced by the judge before whom the conviction was had. Nevertheless, provided the court has not lost jurisdiction, a judge sitting at a regular term thereof may pass sentence upon a person convicted at another term and before another judge, unless· prevented by some statutory provision. So the successor of a trial judge has power to pass sentence on a prisoner convicted before, but not sentenced by, his predecessor in office, * * * ."

In *State* v. *Lindsey*, 194 Wash. 129, 77 P. (2d) 596, it appears that the accused was tried by Judge Leavy, who sentenced him. That case went to the U. S. Supreme Court, 301 U. S. 397, 57 S. Ct. 797, 81 L. Ed. 1182, was reversed and sent back to the Washington court. In the meantime Judge Leavy had been succeeded by Judge Huneke, who resentenced him. The Washington court said: "As we have seen, Judge Huneke deferred sentencing the appellant until after he had read the evidence." This sentence of Judge Huneke the Washington court upheld. Certiorari was denied by the U. S. Supreme Court, *Lindsey*

v. *State of Washington*, 305 U. S. '637, 59 S. Ct. 108, 83
L. Ed. 409.

We need not wander far afield for the principle contended
for by the Commonwealth has been twice approved by this
court.

In *Southall* v. *Evans*, 114 Va. 461, 76 S. E. 929, 43 L. R.
A. (N. S.) 468, Ann. Cas. 1914B, 1229, the court, speaking
through Keith, P., said:

" * * * He was thereby clothed with every function that
pertained to the judge of the court, and was competent to
pass upon every case then remaining upon the docket. As
a part of the litigation to be disposed of by him, he found
the verdict in the case before us and a motion for a new
trial pending. Neither party can deny his jurisdiction ·to
hear and determine· that motion. The plaintiff' in error
invoked that jurisdiction when he demanded that the verdict
should be set aside; the defendant in error submitted himself
to that jurisdiction when he resisted'that motion and asked
that a judgment be rendered upon the verdict."

The same principle came before us in *Conaway* v. *Commonwealth*, 118 Va. 792; 88 S. E. 75, where, speaking
through Judge Kelly, we said:

"Upon the foregoing facts, as to which there is no dispute,
·we are of opinion that it was proper for Judge Chinn to
sign these bills as and when he did, and that they now have
as much validity and are as much parts of the record before
us as if they had been signed by Judge Blakey when first
tendered to him. The fact that the judge who signed them
was not in person the same judge who tried the case has not·
been made the subject of any question before .us, and is
placed beyond the pale of controversy by the decision of
this court in *Southall* v. *Evans*, 114 Va. 461, 76 S. E. 929,
43 L. R. A. (N. S.) 468, Ann. Cas. 1914B, 1229. It may
be said here, as was said by Judge Keith there, 'he (the succeeding judge) was thereby clothed with every function of
the judge of the court, and was competent to pass upon
every case then remaining upon the docket.' "

The evidence in this case was taken before Judge Weymouth in the presence of the accused and was read by Judge Walter before pronouncing sentence   We find no error in the record.

*Affirmed.*