# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Kenton L. Ruffin

February 26, 1997

Case No. CR96-002331-00

BY JUDGE MARC JACOBSON

Counsel for Defendant Kenton L. Ruffin (Defendant) have filed a Motion to Suppress the statements Defendant gave to Norfolk Police on or about January 10, 1996. The Defendant stands indicted on thirteen counts, including capital murder. The charges stem from one alleged robbery and two alleged attempted robberies committed in the early morning hours of January 4, 1996. During one of the alleged attempted robberies, the Defendant is alleged to have shot and killed Paul Robinson with a sawed-off shotgun. At the time of the alleged crimes, Defendant was 14 years old. A hearing was had in the Norfolk Juvenile and Domestic Relations District Court and the case was transferred to the Norfolk Circuit Court. Counsel for the Defendant and the Commonwealth's Attorney have requested and agreed that the transcripts of the transfer hearing in the Norfolk Juvenile and Domestic Relations District

Court be reviewed and utilized by the Court without further testimony or evidence being presented relative to the subject Motion to Suppress.

On January 9, 1996, Joseph Armstrong was arrested, along with another person, by the Virginia Beach Police driving a stolen dark green Cherokee motor vehicle, the vehicle that was allegedly used in or involved with the crimes with which Defendant is charged. After questioning by the Virginia Beach Police, Armstrong was taken to the Norfolk Police Operations Center (Center) where he gave a written statement. During the period between the alleged crimes of January 4, 1996, and the arrest of Armstrong by Virginia Beach Police on January 9, Norfolk Investigators also had been interviewing the victims of the crimes and the murder victim's girlfriend. Based on the information provided by Armstrong and the victims, the Norfolk Police Investigators secured a search warrant for the apartment of Carolyn Ruffin (Mother), the mother of the Defendant, at 1352 Hanson Avenue in the City of Norfolk and another apartment nearby. The warrant was executed January 10, 1996, at approximately 6:25 a.m. Upon entering Mother's Hanson Avenue apartment, the police found Defendant and Mother along with eight other people. Upon searching the apartment the police found a sawed-off 12-gauge shotgun, four shotgun shells, a .22 caliber pistol, and a bag full of jewelry and clothes. The police took the Defendant into custody and transported him to the Center. The Mother was also asked to accompany the police to the Center and was transported there separately.

At 10:00 a.m. on January 10, 1996, the Defendant, Mother, Investigator Ford, and Investigator Norell were in an interrogation room at the Center. The Investigators presented the Defendant PD Form 381, which contained, in numbered sentences, the rights and warnings required by *Miranda v. Arizona*. He was asked to read the first line and was asked if he understood it, and he wrote "yes" on the form underneath the first line. Investigator Norell testified he told Mother that it was important that if she had any questions as they went through the rights form that she should ask. The Investigators went through all seven rights on the PD Form 381 with the Defendant, who signed "yes" underneath each right signifying he understood the right. At the bottom of the form the Defendant signed, dated, and timed it. Mother also signed PD Form 381 as a witness.

Mother claims she was not thinking clearly or rationally at the time, having endured the police breaking down the door of her residence at 6:30 in the morning. She also testified at the transfer hearing that when her son, the Defendant, signed the rights form and was being questioned, her spirit was removed from her body. She acknowledged witnessing the Defendant sign the

rights form. Mother was 40 years old, a college graduate, and had been a school teacher for eight years as of January 10, 1996.

Investigators Ford and Norell questioned the Defendant concerning all three of the alleged robberies and the alleged homicide. According to the Investigators, the Defendant was alert, cooperative, and calm during the questioning, but at times was a little nervous. After the oral interview, at approximately 10:30 a.m., Mother left. Conflicting testimony was presented as to exactly why she left. The Investigators testified that Mother asked to leave when her daughter arrived at the Center to give her a ride home. Mother claimed that she was told to leave because she would not be needed anymore. By both accounts, however, she was present during the signing of the rights form (PD Form 381) and during the oral interview that followed.

At 11:55 a.m., the Investigators took a taped statement from the Defendant concerning the homicide of Paul Robinson, which was transcribed and then signed by the Defendant at 1:30 p.m. At 1:45 p.m., the Defendant gave another oral statement to Investigators Davies and Pugh. At 3:27 p.m., the Defendant gave a recorded statement concerning a robbery at Harry's Bar and Grill. At 4:00 p.m., the Investigators took another recorded statement concerning a robbery on Pleasant Avenue. Before each statement, the Investigators reviewed the legal rights form with the Defendant. These statements were transcribed and the Defendant, after reviewing them and making changes, signed them.

The Defendant has moved this Court to suppress the statements given to the Norfolk Police. The Defendant claims that he was not advised of his *Miranda* rights and that the police told him to "tell [us] what [we] want to hear and you can go home." Inspector Davies specifically denied making such a statement. (Prob. Cause and Transfer Hearing Tr., vol. II, at 155.)

The Fifth Amendment requires that a suspect be informed of his rights before any custodial interrogation is conducted. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). If a suspect chooses to waive his rights, that waiver must be knowingly, intelligently, and voluntarily given. *Colorado v. Connely*, 479 U.S. 157 (1986); *Miranda*, 384 U.S. at 473. Even if a suspect waives his *Miranda* rights, due process requires that statements still must be made voluntarily to be admissible. *Miller v. Fenton*, 474 U.S. 104 (1985). In determining whether statements were voluntary, a court must look at the totality of the circumstances. *Frazier v. Cupp*, 394 U.S. 731 (1969). In its examination, a court should consider all of the factors surrounding the interrogation, including "both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

4

The burden rests upon the Commonwealth to prove, by a preponderance of the evidence, that the Defendant's statements were voluntary. *Williams v. Commonwealth*, 234 Va. 168, 172, 360 S.E.2d 361, 364 (1987). This means that the Commonwealth must demonstrate that the accused knowingly, voluntarily, and intelligently waived his *Miranda* rights. *Swann v. Commonwealth*, 247 Va. 222, 441 S.E.2d 195 (1994); *see also Grogg v. Commonwealth*, 6 Va. App. 598, 611, 371 S.E.2d 549, 556 (1988) (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). This burden is carried when the Commonwealth presents credible evidence to show that statements were made under circumstances free of coercion and duress and untainted by promises of reward or leniency. *McCoy v. Commonwealth*, 206 Va. 470, 474, 144 S.E.2d 303, 307 (1965). When looking at the issue of coercion, a court should examine "whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or … whether the maker's will 'has been overborne and his capacity for self-determination critically impaired'." *Stockton v. Commonwealth*, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). This requires evaluating both the defendant's background and experience, as well as the conduct of the police. *Gray v. Commonwealth*, 233 Va. 313, 356 S.E.2d 157 (1987).

Youth is one factor that a court may consider when deciding the voluntariness of a particular statement. *Id.* The totality of the circumstances test for voluntariness is the same whether the suspect be a juvenile or an adult. *Fare v. Michael C.*, 442 U.S. 707 (1979); *Green v. Commonwealth*, 223 Va. 706, 292 S.E.2d 605 (1982). The Supreme Court in *In re Gault*, 387 U.S. 1 (1967), the seminal case upholding juvenile criminal defendants' rights, emphasized that admitting statements of juveniles requires special caution. *Id.* at 556 (citing *Haley v. Ohio*, 332 U.S. 596 (1948)). The Court cautioned that "the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that is was not the product of ignorance of rights or of adolescent fantasy, fright or despair." *Id.* at 561. Consequently, when examining the statements of a juvenile, a court should evaluate "the juvenile's age, experience, education, background, and intelligence, and … whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979); *see also Williams v. Peyton*, 404 F.2d 528 (4th Cir. 1968) (holding that while youth by itself is not ground for holding a juvenile's statements

inadmissible, youth does require special scrutiny to determine whether juvenile's statements were voluntary).

The presence or absence of an adult — whether that adult be a parent, a guardian, a relative, or an attorney — is also a factor to consider when evaluating the voluntariness of a juvenile's statement. *See In re Gault*, 387 U.S. 1, 55 (1967) (requiring special care when counsel or parent not present); *Gallegos v. Colorado*, 370 U.S. 49 (1962) (invalidating conviction based on a confession of a fourteen-year-old defendant held for five days without seeing a "lawyer, parent, or other friendly adult"); *Haley v. Ohio*, 332 U.S. 596 (1948) (invalidating conviction based on confession of fifteen-year-old defendant interrogated without being informed of his legal rights and without seeing his mother for six days). But the absence of a parent or lawyer does not necessarily render statements inadmissible. In *Gallegos*, the Court ruled inadmissible a juvenile's statements, citing several factors including "the youth of the petitioner, the long detention, the failure to send for his parents, the failure immediately to bring him before [a] judge ... [and] the failure to [ensure] ... that he had the advice of a lawyer or friend," 370 U.S. at 55, all of which factored into the Court's decision.

In Virginia, youth, by itself, is not sufficient ground for refusing to admit a defendant's statements. *Johnson v. Commonwealth*, 184 Va. 466, 35 S.E.2d 770 (1945). Nor does the absence of a parent render statements inadmissible *per se*. The Court of Appeals has held that:

> it is desirable to have a parent, counsel or some other interested adult or guardian present when the police interrogate a juvenile, and it is even more desirable to have an interested adult present when a juvenile waives fundamental constitutional rights and confesses to a serious crime. However, it is well established that the mere absence of a parent or counsel does not render a waiver invalid.

*Grogg v. Commonwealth*, 6 Va. App. 598, 371 S.E.2d 549 (1988); *accord Novak v. Commonwealth*, 20 Va. App. 373, 457 S.E.2d 402 (1995) (holding admissible statements of sixteen-year-old after he waived his *Miranda* rights without parents present). Yet in this case, Mother was present when the Defendant was originally advised of his *Miranda* rights and waived them. Although she was not present when the Defendant's statements were recorded and signed, and there is conflicting testimony concerning the reasons for her absence, her presence was not required at that time as a matter of law.

A case quite analogous to the instant case is *Johnson v. Commonwealth*, 12 Va. App. 391, 404 S.E.2d 384 (1991). Johnson was a fifteen-year-old juvenile tried and convicted as an adult for murder, robbery, and use of a

firearm in the commission of those felonies. The trial court found that Johnson was capable of reading and writing at a seventh grade level, suffered from no disabilities, and showed no signs of being sleepy or under the influence of alcohol or drugs. Johnson's father, an ordained minister, was present when the he was read his *Miranda* rights and both Johnson and his father signed the rights waiver form. Although conflicting evidence was presented, the trial court found there were no threats, force, or display of weapons. The Court of Appeals held the statements were properly admitted, since credible evidence supported the trial court's finding that, after considering all the evidence, Johnson was capable of comprehending the consequences of his statements, that his will was not overborne, and that the statements were freely and voluntarily made.

Under the precedence of *Miranda v. Arizona*, an accused must be advised of his constitutional rights and knowingly, intelligently, and voluntarily waive those rights before any in-custody interrogation is conducted. In reviewing and considering the totality of circumstances in the instant case, the Defendant's waiver appears to be knowingly, intelligently, and voluntarily given. He was read his *Miranda* rights while in the presence of his mother and before the police conducted any questioning.

The Defendant had the benefit of having his Mother present when he was advised of and waived his *Miranda* rights. According to the transfer hearing transcripts, Mother claimed she was not in the right frame of mind and was not thinking clearly. However, she does not claim that she did not understand the rights that were being read to her son. Mother is a college educated woman and presently is a school teacher. The facts do not indicate that the Defendant did not understand his rights when he waived them. Moreover, no evidence was introduced that Defendant was threatened, cajoled, tricked, or intimidated into relinquishing his rights. Although Defendant was young, he had the benefit of a parent with him, whom he could have consulted if he had questions or reservations. Defendant had only been in custody for three-and-a-half hours when he waived his rights. Evidence in the hearing transcripts suggest that he was allowed to use the restroom, drink, and smoke.

Defendant would suggest or allege that his confession to the police should be suppressed on the ground that his will was overborne because the police allegedly told him that they would allow him to leave "if he told them [the police] the things they wanted to hear." As previously stated, once the accused has waived his rights, the circumstances of the interrogation must reveal that the Defendant's responses were voluntary and not the subject of threats, intimidation, or coercion. Statements are voluntary if the totality of the circumstances show that they were the product of an essentially free and unrestrained choice by its maker. In determining whether statements were voluntarily given, a court must look at the totality of the circumstances,

including both the characteristics of the accused as well as the circumstances surrounding the confession or statement.

In the instant case, the evidence does not indicate that the investigators threatened or coerced the Defendant. In the probable cause and transfer hearing, defense counsel attempted to create the impression that the police investigators filled the Defendant's head with the details of the crimes and the Defendant simply repeated these facts when the police promised him he could go home with his Mother if he would just tell them what they wanted to hear. The testimony from the hearing transcripts does not support this theory. Investigator Davies specifically denied telling the Defendant he could go home if he just told them what they wanted to hear. Mother never testified to hearing any such statement by the police, and the Defendant did not testify at the hearing. While the investigators may have supplied additional details, such as the exact address where the crimes occurred and the names of the victims, the questions they asked of the Defendant were open-ended. The responses the Defendant gave appear to be original because they contradict what other witness stated happened, particularly regarding who was driving and who had the shotgun when it went off. Further, it appears the Defendant supplied additional facts or different versions of the facts. Thus, defense counsel's allegations are without merit and without valid evidence to support them.

All of the other circumstances surrounding the Defendant's statement evidence its voluntariness. Some conflict exists over exactly why and under what circumstances Mrs. Ruffin left the interrogation after the oral statement was given. The undisputed fact remains, however, that she was present at the time the Defendant waived his *Miranda* rights. This Court has not received persuasive evidence that the Defendant lacked the mental capacity to understand his rights or to waive those rights. The evidence indicates that the Defendant had been read *Miranda* rights on at least one previous occasion. Nothing in the witness' testimony support defense counsel's allegations that the facts of the crimes were put into the Defendant's head. The Court finds that all of the circumstances, taken as a whole, demonstrate that the Defendant's waiver was knowingly, intelligently, and voluntarily given. The Court finds further the subsequent written statements, although given outside of the presence of the Defendant's Mother, were also voluntarily.

The Defendant's Motion to Suppress the statements given to Norfolk Police Investigators on January 10, 1996, is denied.