# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CONAWAY V. COMMONWEALTH.

### March 16, 1916.

#### Absent, Cardwell, J.

1. BILLS OF EXCEPTION—*Tendered in Time but Signed Afterwards.*—Proper bills of exception tendered to the judge within the time prescribed by law are valid though not signed by him till after the expiration of such time, or if he die, though signed by his successor in office after the expiration of such time. If tendered in time but not signed, the signature may be compelled by *mandamus* after the expiration of the time prescribed by law for tendering such bills. A party who has done everything required of him by law to perfect his bill of exception, will not be deprived of his rights by the failure of the judge to sign the bill. *Anderson* v. *Commonwealth,* 105 Va. 533, overruled on this point.

2. CRIMINAL LAW—*Murder of First Degree—Mitigation of Punishment.—Prior Offense—Election.*—Although the punishment for murder of the first degree was mitigated by an act in effect June 19, 1914, so as to allow the jury to fix the punishment either at death or confinement in the penitentiary for life, a prisoner who committed the offense prior to that date but is tried subsequent thereto is not obliged to accept the mitigation. He is given the right to do so by section 6 of the Code, but is not compellable so to do. Section 6 of the Code is to be read in connection with section 3663 as amended by the act aforesaid in effect June 19, 1914, and when so read the right of election is plain. A refusal of such election constitutes reversible error.

Error to a judgment of the Circuit Court of Lancaster county. The prisoner was found guilty of murder of the first degree, and sentenced to imprisonment for life.

*Reversed.*

The opinion states the case.

*R. O. Norris, Jr.,* and *T. J. Downing,* for the plaintiff in error.

*Jno. Garland Pollard, Attorney-General,* and *C. B. Garnett, Assistant Attorney-General,* for the Commonwealth.

KELLY, J., delivered the opinion of the court.

The errors assigned in this case are all based upon bills of exceptions which are challenged by the Commonwealth on the ground that they were not signed by the judge of the trial court within the time required by law. The pertinent facts involved in this preliminary question are these: The bills of exceptions were duly prepared and, on August 10, 1914, which was within the thirty days after the end of the term at which the judgment was rendered, were presented for signature to the Hon. Thos. E. Blakey, judge of the Circuit Court of Lancaster county, who had tried the case. He refused to sign them, stating as his reason that the attorneys for the Commonwealth were not present, but further stating that at some later period, and before the expiration of thirty days from the end of the term, he would arrange for the presence of the attorneys for the Commonwealth and sign the bills. A few days thereafter Judge Blakey became ill and continued so until his death in the early part of the year 1915. The bills of exceptions were never signed by him. Judge Blakey was succeeded by Judge Joseph W. Chinn, who, being informed of the foregoing facts, and being requested to sign the bills, did so, appending to each of them, immediately preceding his signature, a statement which concludes as follows: ". . . and it being agreed between the attorney for the Commonwealth and counsel for the accused that said bill of exceptions fairly states the truth of the case, the same is hereby certified for such further proceedings and relief thereon as the exceptor may be legally entitled to." The bills of exception which were thus agreed

upon and certified as fairly stating the truth of the case were the identical bills which had been tendered to Judge Blakey. We pass without discussion certain consent orders entered by Judge Blakey in vacation, intended by him to extend and preserve the rights of the accused, because we deem these orders irrelevant and devoid of material bearing upon the question in hand.

Upon the foregoing facts, as to which there is no dispute, we are of opinion that it was proper for Judge Chinn to sign these bills as and when he did, and that they now have as much validity and are as much parts of the record before us as if they had been signed by Judge Blakey when first tendered to him. The fact that the judge who signed them was not in person the same judge who tried the case has not been made the subject of any question before us, and is placed beyond the pale of controversy by the decision of this court in *Southall* v. *Evans,* 114 Va. 461, 76 S. E. 929, 43 L. R. A. 468, Ann. Cas. 1914B, 1229. It may be said here, as was said by Judge Keith there, "he (the succeeding judge) was thereby clothed with every function of the judge of the court, and was com- petent to pass upon every case then remaining upon the docket." The reasons and the authorities bearing upon the powers and jurisdiction of a judge under circumstances similar to those here presented are fully discussed in the case just cited, and need not be repeated here.

The accused had done everything she was required to do under the law (Code, sec. 3385) when she tendered to the trial judge bills of exceptions which fairly stated the truth of the case, and she had thereby acquired a right to have them signed which she could have enforced by a writ of *mandamus* regardless of whether she applied for it before or after the thirty days expired. This is not only right and just, but it is the clear and inevitable result of the decisions of this court in *Page* v. *Clopton, Judge,* 30 Gratt. (71 Va.) 415, and *Collins* v. *Christian, Judge,* 92 Va. 731, 24 S. E. 472. In each of

those cases the order requiring the signature of the judge was entered after the expiration of the time within which the signature should under the statute have been affixed. If Judge Blakey had lived and persisted in withholding his signature (as he evidently did not intend to do), or if his successor had declined (as he did not) to affix his signature, it is clear that in either of these contingencies the accused could have availed herself of the remedy by *mandamus*. It necessarily follows that she has a right to rely on the bills of exceptions which were voluntarily signed as above set out.

We do not overlook the case of *Anderson* v. *Commonwealth,* 105 Va. 533, 636, 54 S. E. 305, holding that bills of exceptions tendered to the judge within thirty days after the end of the term but not signed by him until after the thirty days had expired could not be regarded as parts of the record. The opinion in that case was addressed mainly to points not involved in the exceptions, and the question here under discussion does not seem to have been very fully considered. But in any event we are of opinion that the rule there announced is not sound, and the decision, so far as it is in conflict with the views above expressed, is disapproved. The conclusion reached in the present case is supported by the great weight of authority. See *Page* v. *Clopton, Judge,* and *Collins* v. *Christian, Judge, supra;* Burks' Pl. & Pr., sec. 290, p. 522; 3 Enc. Pl. & Pr. 474; 3 Cyc. 44; *Cincinnati Traction Co.* v. *Ruthman,* 85 Ohio St. 62, 96 N. E. 1019, Ann. Cas. 1913A, 911, and very full note thereto on page 914.

This brings us to a consideration of the assignments of error.

The accused was indicted for the murder of her husband, William Conaway, whose death occurred on January 24, 1914. At that time section 3663 of the Code was as follows: "Murder of the first degree shall be punished with death." By an act which became a law on June 19, 1914 (Acts 1914, C. 240), that section was made to read as follows: "Murder of the first degree shall be punished with death, or in the discretion of the

jury by confinement in the penitentiary for life." At the trial, which was had in July, 1914, the clerk charged the jury that if they found the accused guilty of murder in the first degree they should "further ascertain whether she shall be punished with death or by confinement in the penitentiary for life." To this charge she promptly objected and moved the court to strike it out and charge the jury, in lieu thereof, that if they found her guilty of murder in the first degree they should say so, and no more. This objection and motion were both overruled, and the action of the court in that respect is assigned as error.

We are of opinion that this assignment of error is well founded. The argument of the attorney-general to show that the amendment of the statute must be construed as mitigating the punishment and, therefore, was not an *ex post facto* law is supported by convincing authority and appears to be perfectly sound; but the argument, as we conceive, is beside the mark. The accused does not contend that the amendment is *ex post facto* and therefore invalid, but that it must be read in the light of section 6 of the Code, and that when so read it confers upon her the right to elect whether she will be sentenced under the original or the amended act. There seems no escape from this conclusion, for the plain reason that the law is so written. We wish to make it clear that we do not mean to say that the legislature could not have lawfully amended the statute so as to make the mitigated penalty apply to homicide committed before its enactment, nor yet that the amendment, standing alone, would not so apply in its present form; but what we do mean to say is that the amendment and section 6 of the Code must be read together, and that when so considered the contention of the accused is manifestly correct. Section 6 of the Code is as follows: "No new law shall be construed to repeal a former law, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense

or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect; save only that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings; *and if any penalty, forfeiture, or punishment be mitigated by any provision of the new law, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new law takes effect.*" (Italics ours.)

In this connection we are cited, in the brief for the Commonwealth, to three Illinois decisions, but we are of opinion, as presently shown, that they support the contention of the accused.

In the case of *Johnson* v. *People,* 173 Ill. 131, 50 N. E. 321, under an act almost *ipsissimis verbis* with section 6 quoted above, it was held that the defendant "was entitled to have the jury fix the punishment by their verdict under the act as it stood at the time of the commission of the crime." In that case, which, like this one, happened to be the prosecution of a woman for the murder of her husband, the statute of Illinois prescribed one punishment at the date of the homicide and another at the time of the trial. The prisoner was convicted and sentenced under the law as it was at the time of the trial. This was held to be error for which the judgment was reversed and the cause remanded for a new trial.

Again, in *Kossakowski* v. *People,* 177 Ill. 563, 53 N. E. 116, it was held, applying the provisions of the Illinois statute similar to section 6 of the Virginia Code, that the punishment should be fixed according to the law in force when the crime was committed, unless the prisoner invoked the benefit of a new law passed after the fact. In that case the Supreme Court of Illinois said: "But we think the question is regulated by statute in this State. When the act providing for indeterminate sentences and a system of parole was adopted (referring here to the change in the punishment) sec. 4 of chapter 131

of the Revised Statutes, entitled 'statutes,' was in force. (The opinion then proceeds to quote sec. 4, which is practically identical with sec. 6 of the Code of Virginia.) This section is not expressly referred to in the indeterminate sentence and parole act, and it is to be presumed that the act was adopted in view of the provisions of section 4. The offense having been committed before the adoption of the parole system, it was proper, by virtue of the provisions of said section 4, to conduct the prosecution and pronounce judgment in accordance with the law in force at the time of the commission of the offense. If the plaintiff in error was of opinion that the manner of punishment provided by the parole system was more favorable to him than that provided by the law in force at the time of the commission of the offense, it was his privilege to have the provisions of such law applied by the court in his case, in accordance with the provisions of said section 4." The jury had found the plaintiff in error guilty and fixed his punishment according to the law as it was when the crime was committed, and as he had not objected or invoked the benefit of the terms of section 4, the judgment was affirmed.

The later Illinois case of *People* v. *Vito,* 237 Ill. 434, 86. N. E. 1041, is not in point, as we understand it. The defendants in that case were contending for a construction of an amendment which would have established the repeal of the sections of the act under which they were being prosecuted. No such contention is made here, and if it were we would have no difficulty in declaring it wholly untenable. This case of *People* v. *Vito* cites, with apparent approval, the other two Illinois cases above mentioned.

In the absence of the consent of the accused, and more plainly still in the face of her objection, it was error to apply the amendment of section 3663 to the verdict and judgment in this case. Whatever may have been her reasons, and however others may regard her choice, the prisoner certainly had the

right to make the election which she insisted upon, and should have been allowed to exercise it. The evidence was circumstantial. She insists that it was wholly insufficient to convict her at all. At the trial, she may have sincerely and earnestly believed that the jury, upon that evidence, would not, in any event, fix the death penalty. If she did so believe, her election was reasonable, and, if allowed, meant in her view that the chance of a life term in prison was eliminated. At any rate the privilege of choosing between the original act and the amendment belonged to her and not to the Commonwealth under the plain terms of section 6 of the Code. *Ita lex scripta est.* In other words, and this is the gist and extent of our decision, the amendment must be read with section 6, and when so read is substantially as follows:

"Murder of the first degree shall be punished with death, or, in the discretion of the jury, by confinement in the penitentiary for life, but the mitigated punishment provided by this act shall not, without the consent of the party affected, be applied to any judgment pronounced after this new law takes effect for an offense committed before it takes effect."

Having reached this conclusion, we deem it unnecessary to pass upon the assignments of error relating, respectively, to the venue and to the second *venire facias* issued in the cause, and inadvisable to pass upon the assignment based upon the insufficiency of the evidence.

The judgment must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had not in conflict with the views herein expressed.

*Reversed.*