# Richmond.

## Douglas Mitchell v. Commonwealth.

### November 13, 1924.

1. Exceptions, Bill of—*Time of Signing—Section 6252 of the Code of 1919.*—Section 6252 of the Code of 1919, prescribing the time within which bill of exceptions must be presented to and signed by the trial judge, has been uniformly held to be a restrictive statute, conferring upon the trial court only such powers as to signing bills of exception as is warranted by the strict letter of the law contained in this section.

2. Exceptions, Bill of—*Time of Signing—Section 6252 of the Code of 1919—Case at Bar.*—While it must affirmatively appear that the bill of exceptions was signed within the time prescribed by law, how it must affirmatively appear has not been adjudicated. In the instant case it was contended that the bill of exceptions should be formally dated, or an order should be entered by the trial judge showing that the same were filed and signed within the sixty days, as provided by the statute. While this would be the better practice and one to which the trial courts should strictly conform, yet the Supreme Court of Appeals did not feel justified in going to such length and thus fix an unyielding status, which might possibly prejudice the rights of a party litigant through no fault of his, but owing to the lack of careful action upon the part of the trial judge.

3. Exceptions, Bill of—*Time of Filing—Where Party has done all that could be Expected of Him.*—If a party excepting has done all that is required of him, has presented a proper bill in due time to the judge for his signature and the judge has failed to sign it within the time prescribed, from negligence or other cause, the exceptor will not be deprived of his bill of exception.

4. Exceptions, Bill of—*Time of Signing—Evidence held Sufficient to Establish that Bills were Signed in Time.*—In the instant case bills of exceptions were tendered to the trial judge on November 28, 1923, within sixty days of final judgment, and the record showed that the signature of the judge was affixed to the bills of exceptions and it further appeared that the trial judge endorsed upon the record that the clerk should note the filing of the foregoing bills of exceptions, and date the note, November 28, 1923.

*Held:* That this was a sufficient showing that the bills of exceptions were signed by the judge within the time allowed by the law.

5. ASSAULT AND BATTERY—*Homicide—Defense of Another—Character of the Other as a Peaceable and Law Abiding Citizen—Case at Bar.*—In the instant case, a prosecution for a felonious and malicious assault, the defense was that accused shot in defense of his brother who was engaged in combat with the prosecuting witness. For the purpose of showing that the brother had declined further combat and that the prosecuting witness was the aggressor at the time the accused went to the assistance of his brother, and as a circumstance or a fact to be considered by the jury in determining whether it was apparently necessary for the accused to go to his brother's assistance, the accused sought to introduce evidence establishing the reputation of the brother as a peaceable and law abiding citizen.

*Held:* That the court erred in excluding this testimony.

6. ASSAULT AND BATTERY—*Homicide—Defense of Another—Relatives.*—The rule is clear that a relative interfering to protect a relative is, under the law, made one with the original combatant, and hence subject to the same rights and liabilities, and his acts and conduct are to be construed as the acts and conduct of the relative to protect whom he interferes.

7. CRIMINAL LAW—*Character in Evidence.*—Evidence of one's good character may be the determining factor in a case where the jury have a doubt as to the guilt of the accused.

8. CRIMINAL LAW—*Character—When Character Becomes an Issue—Presumption as to Character.*—Character only becomes an issue in the trial of a criminal case when made so by proper proof. Without any evidence of character the jury are not warranted in presuming it either good or bad.

Error to a judgment of the Circuit Court of Albemarle county.

*Reversed.*

The opinion states the case.

*W. Gilmer Dunn,* for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

The grand jury of Albemarle county having returned an indictment against the accused, Douglas Mitchell, for a felonious and malicious assault upon one Frank Byrd, he was on the 8th day of October, 1923, arraigned for trial.

Upon his arraignment he pleaded "not guilty" to the indictment, and upon that plea the jury found him not guilty of the felony charged, but guilty of assault and battery, and fixed his punishment at sixty days confinement in jail and a fine of seventy-five dollars. Upon this verdict of the jury judgment was entered by the trial court. To that judgment this writ of error was awarded.

The Commonwealth, by its Attorney-General, has filed a motion to dismiss this writ of error, insisting that same was improvidently awarded. The basis of the contention is that the assignments of error are based upon bills of exception number one and number two; that the record discloses that neither of these bills of exceptions bears any date, and as the record was not certified by the clerk until March 10, 1924, which was a period of more than sixty days from the 8th day of October, 1923, that it does not affirmatively appear that the bills of exceptions were signed within the time prescribed by law.

The pertinent facts involved in a disposition of this preliminary question, as disclosed by the record, are as follows:

"The accused was tried and judgment entered on the 8th day of October, 1923; the bills of exception were tendered to the trial judge on the 28th day of November, 1923. It further appears that on the 28th day of November, 1923, counsel for the accused gave the attorney for the Commonwealth written notice that he would on the 30th day of November, 1923, apply to the

clerk of the Circuit Court of Albemarle county for a transcript of the record "in the case pending in said court under the style of Commonwealth of Virginia versus Douglas Mitchell." Under date of November 28, 1923, appears the following endorsement upon the notice:

"Service of the above notice is hereby accepted and acknowledged.

"R. T. W. Duke, Jr.,
"Attorney for the Commonwealth."

It further appears that after signing bills of exceptions numbers 1 and 2, the trial judge endorsed upon the record the following:

"To W. L. Maupin, clerk, Circuit Court of Albemarle county:   You will note the filing of the foregoing bills of exception.

"John W. Fishburne,
"Judge."

"November 28, 1923."

The certificate of the deputy clerk as to the authenticity of the record shows, among other things, the following:

"Virginia:   In the clerk's office of the Circuit Court of Albemarle county, March 10, 1923.

"And I further certify that the bills of exceptions and certificates herein were duly signed and sealed by the judge of the aforesaid court within the time prescribed by law and the terms of the judgment herein."

[1] So much of section 6252, Code of 1919, as is applicable to this case provides that "any bill of exception may be tendered to the judge and signed by him, at any time before final judgment is entered, or within sixty days from the time at which such judgment is entered,

whether another term of said court has intervened or not."

This statute has been frequently construed by the appellate court, and has been uniformly held to be a restrictive statute, conferring upon the trial court only such powers as to signing bills of exception as is warranted by the strict letter of the law contained in this section of the Code.

[2, 3] In *James' Case,* 133 Va. 724, 112 S. E. 761, Judge Burks, delivering the opinion of the court, said: "In order that a bill of exceptions may be considered by this court, it must affirmatively appear from the record that the bill was signed by the judge of the trial court within the time prescribed by law." *Standard Peanut Co.* v. *Wilson,* 110 Va. 650, 66 S. E. 772.

Just how it must affirmatively appear has not been adjudicated. It is virtually contended by the Attorney-General that the bills of exception should be formally dated, or an order should be entered by the trial judge showing that the same were filed and signed within the sixty days, as provided by the statute. While this would be the better practice and one to which the trial courts should strictly conform, yet we do not feel justified in going to such length and thus fix an unyielding status, which might possibly prejudice the rights of a party litigant through no fault of his, but owing to the lack of careful action upon the part of the trial judge.

In Burks' Pleading and Practice (2d ed.), section 283, page 518, we read: . "The mere signature of the judge without more makes the bill as much a part of the record as if it were copied *in extenso* in the order book and his signature affixed thereto, but in order to have this effect it must in some way appear that this official act was done within the time prescribed. Just how this shall be made to appear from the record is not stated, but as the statute declares the bill to be a part of the

record, if the bill itself is dated, the date no doubt will be taken as correct, and this would seem to answer the requirement of the statute.''

Commenting on this section, footnote 43, the author says:    "The statement of the text that the record must show that the bill was signed and filed within the time prescribed by law, is subject to the qualification that if the party excepting has done all that was required of him, that is, has presented a proper bill in due time to the judge for his signature and the judge has failed to sign it within the time prescribed, from negligence or other cause, the exceptor will not be deprived of his bill of exception.''

In *Lancaster* v. *Stokes*, 119 Va. 153, 89 S. E. 86, Judge Whittle says:    "In *Conaway* v. *Commonwealth* (118 Va. 794, 88 S. E. 75), the bills of exceptions were tendered in time, though not signed until after the time limit had expired; yet the court held that the accused had acquired a right to have the bills of exceptions signed 'which she could have enforced by a writ of *mandamus* regardless of whether she applied for it before or after the thirty days expired.'. Therefore, the bills were held to be a part of the record.''

*Conaway's Case, supra,* 118 Va. 792, 88 S. E. 75, noted a departure from the former holding of this court in the case of *Anderson* v. *Commonwealth,* 105 Va. 533, 536, 54 S. E. 305, and expressly disapproved of the doctrine laid down in the latter case, wherein it was held "that bills of exceptions tendered to the judge within thirty days after the end of the term but not signed by him until after the thirty days had expired could not be regarded as parts of the record.''

[4] In the instant case there is no doubt in our mind that the record was presented to the judge of the trial court within the sixty days specified by the statute.

The record shows that the signature of the judge was affixed to the bills of exceptions; this fact, taken in connection with the order directed to the clerk to *"note the filing of the foregoing bills of exceptions,"* brings the case within the rules laid down by this court.

The motion to dismiss will be overruled.

[5] This brings us to a consideration of the assignments of error, which are two in number:

1. That the trial court erred in excluding the testimony as to the good character of Armstead Mitchell, as a peaceable and law abiding citizen.

2. That the court erred in refusing to set aside the verdict as contrary to the law and the evidence.

It appears from the evidence in the case that on the 7th of November, 1921, the accused, Douglas Mitchell; Frank Byrd, the man who was shot; Armstead Mitchell, a brother of the accused; and several other persons, were in a store at Cash's corner in Albemarle county. During a discussion of a fox chase, Byrd insisted that the dogs had circled the mountain on which they were running three times. This statement was denied by the accused, and in turn reiterated by Byrd; whereupon the accused called Byrd a liar and Byrd called the accused a poisonous liar. After this exchange of epithets, the accused left Byrd and sat down in another part of the store house.

At this point Armstead Mitchell said to Byrd: "You is getting worse than Eddie Wood about dogs. It seems like you don't want me to have any dogs." Byrd replied: "Armstead, you are a liar if you say I am like Eddie Wood." At the time this epithet was applied Byrd had his hands in his pockets. Armstead Mitchell then struck Byrd with his fist. On cross-examination Byrd admitted he had a knife in his pocket, but denied that he ever drew it out of his pocket.

According to the testimony of Byrd, after he was struck by Armstead Mitchell, "he (Mitchell) grabbed up a pop bottle and Fleming Byrd got between us and said: 'Don't you all do that.'   Armstead dropped the bottle and grabbed an axe and said: 'I will split your brains open.'   At that time his brother shot me."

The evidence introduced in behalf of the accused tends to show that at the time Byrd was struck he drew a knife from his pocket and started toward Armstead Mitchell.   That Armstead Mitchell retreated behind the counter, dropped a pop bottle he had picked up and secured an axe.   That he did not attempt to strike Byrd but warned him not to try to cut him with the knife.   At this juncture, the accused, who was seated upon the floor, heard James Gardner say, "Douglas, Frank is going to cut your brother."   The accused then narrated what occurred as follows:

"I said don't let him cut him and I got up and made towards them.   When I got to them Fleming Byrd was trying to keep them apart and Frank was making to cut Armstead and I shoved him and then backed off and he started at me, and I backed off and he started at me the second time and I backed off and my back hit the stove and I shot him.   I had to or be cut myself.   I was in a corner."

For the purpose of showing that Armstead Mitchell had declined further combat and that Frank Byrd was the aggressor at the time the accused went to the assistance of his brother and as a circumstance or a fact to be considered by the jury in determining whether it was apparently necessary for the accused to go to his brother's assistance, the accused sought to introduce evidence establishing the reputation of Armstead Mitchell as a peaceable and law abiding citizen.

On the direct examination of Hon. G. Barclay Rives,

a witness for the accused, the following questions were sought to be propounded:

"Do you know the general reputation of Armstead Mitchell as a peaceable and law abiding citizen?" and also, "Is that reputation good or bad?"

Upon the objection of the attorney for the Commonwealth, the court refused to permit the witness to answer the questions. If permitted to answer, witness would have stated that he knew the reputation of Armstead Mitchell as a peaceable and law abiding citizen and that said reputation was very good.

In sustaining the objection to the question, we are of the opinion the trial court erred, and that the first assignment of error is well founded.

The object of this evidence was not for the purpose of sustaining the character of Armstead Mitchell as a witness in the case, but as throwing light upon the conduct of the parties at the time of the interference by the accused. The question as to the attitude and conduct of Armstead Mitchell at the precise time the accused intervened is a most material one. As to what his attitude was there is serious conflict in the evidence. If Armstead Mitchell was the aggressor, then the accused would not have been justified in taking hold of Byrd, except for the purpose of separating the combatants.

[6] On the other hand, if Armstead Mitchell had in good faith retired from the combat, and was merely seeking to avoid a murderous assault upon him on the part of Byrd, then the accused had both a legal and a moral right to interfere to protect his brother, for, in law, if the act of Armstead Mitchell would have been lawful if he had committed the assault, then the act of the accused was lawful.

"The rule is clear that a relative interfering to protect a relative is, under the law, made one with the

original combatant, and hence subject to the same rights and liabilities, and his acts and conduct are to be construed as the acts and conduct of the relative to protect whom he interferes."  ·2 Wharton's Cr. Ev. (10th ed.), page 1781, and authorities cited.

If the foregoing principle of law is sound—and we think it is—then the accused had the unqualified right to show, if he could, justification for his act to the same extent as if the assault had been committed in self-defense.

As stated in 2 Wharton's Cr. Ev. (10th ed.), section 932, the rule is: "Where a homicide is committed in defense of another, every circumstance that would be relevant to a plea of self-defense is relevant to show justification to the same extent as if the homicide had been committed in self-defense; but the person interfering in the defense of another is governed by the status of the original combatant; he is not allowed the benefit of a plea of self-defense unless the person whose part he took could avail himself of that plea, if such person had committed the homicide himself." *Foster* v. *State*, 102 Tenn. 33, 49 S. W. 747, 73 Am. St. Rep. 855; *Stanley* v. *Com.*, 86 Ky. 440, 6 S. W. 155, 9 Am. St. Rep. 305.

[7] There being a conflict of evidence as to the conduct of Armstead Mitchell at the time of the interference by the accused, the jury were entitled to know the character of man Armstead Mitchell was.  Evidence of one's good character may be the determining factor in a case where the jury have a doubt as to the guilt of the accused.  *Briggs' Case*, 82 Va. 554; *Vaughan's Case*, 85 Va. 672, 8 S. E. 584; *Wadley's Case*, 98 Va. 810, 35 S. E. 452.

[8] Character only becomes an issue in the trial of a criminal case when made so by proper proof.  Without

any evidence of the character of Armstead Mitchell, the jury were not warranted in presuming it either good or bad.   Inasmuch as the accused "stood in the shoes" of Armstead Mitchell, it was necessarily essential to his defense of justification that this evidence should have gone to the jury.   As to the presumption of character in a criminal case Judge Harrison, delivering the opinion of the court, in *Robinson's Case,* 118 Va. 785, 87 S. E. 553, said:   "It is further objected that the court erred in refusing an instruction telling the jury that 'in the absence of any evidence respecting the character of the defendant, he is presumed in law to be a man of good character and it is the duty of the jury to give the defendant the benefit of that presumption.'

"This instruction was properly refused.   The weight of authority is to the effect that character is not an issue unless put there by the defendant." *Price's Case,* 21 Gratt. (62 Va.) 846, 868; *McDuffee* v. *State,* 55 Fla. 125, 46 South. 721.

For the error of the trial court in rejecting the evidence set out in the first assignment of error, the case must be reversed and remanded for a new trial, and this action makes it unnecessary to notice the second assignment of error.

*Reversed.*