COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Ortiz and Lorish
Argued at Norfolk, Virginia


DEVINCEO DONTRE HEART

                                                    OPINION BY
v.        Record No. 1120-21-1          JUDGE LISA M. LORISH
                                              SEPTEMBER 13, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Joel P. Crowe, Judge

W. McMillan Powers, Assistant Public Defender, for appellant.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General; Sharon M. Carr, Assistant Attorney General, on
brief), for appellee.


At a probation violation hearing where the parties agreed that the newly enacted Code

§ 19.2-306.1 applied, the court found Devinceo Dontre Heart committed a technical violation of

his probation. This case requires us to interpret Code § 19.2-306.1 and determine whether its

penalty provisions for a "third or subsequent technical violation" apply when a defendant

commits a third violation—technical in nature—after two earlier non-technical violations.

Interpreting the plain language of the text as it was written, we conclude that "third or

subsequent technical violation" requires three or more "technical violations" before the related

penalty provision may apply. Because the trial court reached the opposite conclusion—that a

third or subsequent violation, if technical, triggers the enhanced penalty provision regardless of

the nature of the earlier violations—we reverse and remand for resentencing.

FACTUAL BACKGROUND

In October 2021, Heart appeared before the trial court for a hearing to determine whether he had violated the terms of his probation. This hearing took place several months after legislative changes to the statutory scheme governing probation revocation took effect on July 1, 2021. Before the hearing, Heart's probation officer prepared a sentencing revocation report and a guidelines range based on the newly effective statutes, in particular Code § 19.2-306.1. Relevant to this appeal, the statutory scheme now distinguishes between technical and non-technical violations of probation and newly limits the sentence a court may impose for first and second technical violations.

Heart was originally convicted of possession with intent to distribute cocaine in October 2010 and sentenced to serve five years of imprisonment, with four years and five months suspended upon his successful completion of five years of supervised probation. In the intervening years, Heart violated his probation twice. One order shows that his probation was revoked and his sentence reimposed, with three years and five months resuspended, in March 2014. According to another order, Heart's probation was revoked again in August 2018, his remaining sentence reimposed, and three years and four months resuspended.

At his revocation hearing in October 2021, Heart contested that a violation had occurred. His probation officer testified about the present violation—that Heart had failed to report as directed and failed to maintain contact with her. The officer also listed the dates of his prior violations, and the sentences imposed, without describing them further. No violation reports were introduced into the record for these prior revocations, and nothing from the orders themselves mentions the nature of the violations.

The officer also testified that Heart had new charges pending in Chesapeake Circuit Court. Heart's counsel objected to this testimony as irrelevant to the violations alleged. The trial

court allowed the testimony because "good behavior is always before the court" while explaining that it was not considering whether Heart violated "condition one [for committing a new offense]." The court continued, "It appears that this is a third offense. It's a technical violation."

At the end of the Commonwealth's evidence on the violation, Heart made a motion to strike, arguing that he was "charged with a technical violation, third offense" but that there had "been no evidence . . . of two prior technical violations." In other words, there was no evidence that Heart committed two prior *technical* violations; rather, there were two previous violations total, neither specified as technical. In response, the attorney for the Commonwealth stated, "Judge, that's correct," and then added that "the probation officer testified to the [existence of the] prior violations when I asked her about his adjustment to supervision."

Heart then argued that there was no evidence that those prior violations "were technical violations." The court responded, "[D]oes there have to be testimony that the prior two were technical violations?" and Heart's counsel argued, "Yes, sir. In order for it to be a third technical, I believe you have to show that the first two technical violations actually occurred. We have no idea why he was violated prior."[1] At this point, the attorney for the Commonwealth argued, "Judge, I think it goes to sentencing and not—" before the court interjected, "I do as well. . . . The sentencing guidelines with the technical violations has been checked, as you know. I don't think [the Commonwealth] has to go back and then relitigate the two prior technical or whatever you call them, technical violations, but just the conditions."

Heart then continued to argue that the prior technical violations had not been proved because "[t]here is no testimony that those were technical violations, and if there had been testimony, there's no corroborating evidence of a certified order that they were technical" and

---

[1] The prior sentencing orders entered into evidence at the hearing did not indicate what conditions of probation had been violated.

- 3 -

that "in order for it to be classified as a third technical . . . there has to be some evidence that there are two prior [technical violations]." After the court again disagreed, Heart argued, "That's what the rule and the law requires, that those prior technicals actually be—you can't be here for a third technical violation without proof of the two previous technical violations, and there has been no evidence that the prior violations were technical violations."

The court found that Heart violated the terms of his probation and proceeded to sentence him. The guidelines worksheet, labeled "Third or Subsequent Technical Violation or Any Special Condition Violations," suggested a range of one year to one year and six months of imprisonment. The Commonwealth argued that "the guidelines come up a year to a year and six months, which seems a little high to me" and asked for a sentence of six active months. The court reimposed Heart's remaining balance of three years and four months of incarceration, and suspended two years and ten months, leaving Heart to serve six months to be followed by another year of supervised probation.

## ANALYSIS

We start by addressing the Commonwealth's argument—first raised on appeal—that Code § 19.2-306.1 did not apply at Heart's violation hearing. Concluding that the parties agreed to proceed under Code § 19.2-306.1, we hold, as a matter of first impression, that *the plain language of the text* of Code § 19.2-306.1 requires evidence of two prior technical violations before a defendant may be sentenced for a third technical violation. On this basis, we reverse and remand for resentencing. Finally, we conclude that any error in the admission of evidence about Heart's pending criminal charges was harmless and decline to resolve Heart's argument that the court should have granted his motion to strike.

A.  The penalty provisions of Code § 19.2-306.1 applied because the parties agreed to proceed under the statute.

On an appeal of a probation revocation, the trial court's "findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion." *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (quoting *Jacobs v. Commonwealth*, 61 Va. App. 266, 274 (2018)).  But "an issue of statutory interpretation is a pure question of law which we review de novo." *Id.* (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)).

Code § 19.2-306(A) has always provided the "statutory authority for a circuit court to revoke a suspended sentence." *Id.* at 77.  Effective July 1, 2021:

> Code § 19.2-306(C) was "amended and reenacted" to provide that "[i]f the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1."  The newly enacted Code § 19.2-306.1 limits the period of active incarceration that a circuit court can impose for what the statute refers to as certain "technical violations" enumerated under the new statute.

*Id.* at 78 (citation omitted).

"The General Assembly 'has the power to define criminal punishments without giving the courts any sentencing discretion.'" *Lilly v. Commonwealth*, 50 Va. App. 173, 188 (2007) (quoting *Chapman v. United States*, 500 U.S. 453, 467 (1991)).  Prior to the enactment of Code § 19.2-306.1, Code § 19.2-306(C) required a court to revoke the suspended portion of a sentence upon a finding of "good cause to believe that the defendant ha[d] violated the terms of suspension." *See* 2021 Va. Acts Sp. Sess. I, ch. 538.  The court was then permitted to "again suspend all or any part of this sentence." *Id.*

In *Green*, we considered which version of the law should apply where a probationer both committed the relevant violations before the change in law and where his revocation proceedings

also began before that date.  We concluded that the earlier version of the penalty scheme should be applied at the later hearing, relying heavily on Code § 1-239.  *Green*, 75 Va. App. at 83.  Code § 1-239 provides:

> No new act of the General Assembly shall be construed to repeal a former law, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture, or punishment so incurred, or any right accrued, or claim arising before the new act of the General Assembly takes effect; except that the proceedings thereafter held shall conform, so far as practicable, to the laws in force at the time of such proceedings; *and if any penalty, forfeiture, or punishment be mitigated by any provision of the new act of the General Assembly, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new act of the General Assembly takes effect*.

(Emphasis added).

Our Supreme Court has explained that this statute was intentionally passed "to change the results enunciated" in three cases from the early nineteenth century that each permitted a defendant to receive a lesser punishment where the offense was committed under a harsher version of the law.  *Ruplenas v. Commonwealth*, 221 Va. 972, 975-76 (1981).  Thus, while there is no constitutional reason[2] a defendant may not benefit from a statute that reduces a penalty for actions committed before the statute took effect, there is plainly a statutory hurdle.  When a new statute "did not expressly state that it would apply to offenses committed before its effective date . . . 'before [the] new penalty may be imposed the Commonwealth must first elect to proceed under the new law and then the defendant, as the party affected, must consent to its application.'"

---

[2] The relevant constitutional prohibitions prevent a legislature from passing an *ex post facto* law, a law that impairs the obligation of contracts, or a law that disturbs vested rights in violation of the Due Process Clause.  U.S. Const. art. I, § 10; Va. Const. art. I, §§ 9, 11.

*Green*, 75 Va. App. at 83 (quoting *Ruplenas*, 221 Va. at 977). "Without the concurrence of both parties the previous penalty must apply." *Id.*

In *Green*, we applied the rule from *Ruplenas* to the penalty provisions in Code § 19.2-306.1. We explained that because "[t]he Commonwealth objected to the application of Code § 19.2-306.1" at the hearing, the "absence of an agreement between the parties to proceed under the new statute" meant the statute could not be applied at Green's hearing. *Id.* at 84 (citing Code § 1-239; *Ruplenas*, 221 Va. at 978). We reserved the question of whether the "triggering event date" that determined which version of the law applied was when Green violated his probation or when his revocation proceedings began because "[t]he law was actually the same at the time of both events." *Id.* at 84 n.4.

Here, like in *Green*, the conduct underlying the violations occurred before July 1, 2021, as did the filing of the major violation report and issuance of a capias for the revocation hearing. But, unlike in *Green*, the parties all agreed to proceed under the new law.

In determining whether the parties have consented to the application of a new law, we have only required that the consent occur "before judgment is pronounced," and observed that none of our cases require the "election to be made prior to a defendant's plea." *Awkward v. Commonwealth*, 19 Va. App. 605, 608 (1995) (first quoting *Abdo v. Commonwealth*, 218 Va. 473, 478 (1977); then citing *Ruplenas*, 221 Va. at 977). We have never required this consent to take written form. Instead, we have looked to what happened at the relevant proceeding as evidence of a party's intent. For example, when a defendant objected to jury instructions based on a new, mitigating version of a murder statute and moved the trial court to strike the same, the Supreme Court held that she had not consented to application of the intervening law. *Conaway v. Commonwealth*, 118 Va. 792 (1916). Likewise, the Commonwealth's objection to Code § 19.2-306.1 at the revocation hearing was definitive in *Green*. 75 Va. App. at 84.

- 7 -

Here, the probation officer prepared guidelines relying on the framework created by the amended version of Code § 19.2-306.1.[3] The court and counsel for all parties received copies of the guidelines before the hearing. During the revocation hearing, the court stated, without objection, that "[i]t appears that this is a third offense. It's a technical violation." After the Commonwealth's evidence on the violation, Heart made a motion to strike, arguing that he was "charged with a technical violation, third offense" but that there had "been no evidence . . . of two prior technical violations." In response, the attorney for the Commonwealth did not argue that this was irrelevant or object to the use of Code § 19.2-306.1. Instead, the Commonwealth affirmatively stated, "Judge, *that's correct*, except for, well, the probation officer testified to the prior violations when I asked her about his adjustment to supervision." (Emphasis added).

Heart continued to argue that there was no evidence that those prior violations "were technical violations." The court asked, "Does there have to be testimony that the prior two were technical violations?" and Heart argued that "[i]n order for it to be a third technical . . . you have to show that the first two technical violations actually occurred" and there was no evidence of "why he was violated prior." Again, in response, the Commonwealth did not argue that this inquiry was irrelevant or object to the use of Code § 19.2-306.1. Instead, the Commonwealth affirmatively argued: "Judge, I think it goes to sentencing and not—" before the court interjected, "I do as well. . . . The sentencing guidelines with the technical violations has been checked, as you know. I don't think she has to go back and then relitigate the two prior technical or whatever you call them, technical violations, but just the conditions."

---

[3] Because the statute treats certain technical violations as more severe than others, the guidelines separately listed "Technical Violation Conditions 2-8 or 10" with boxes for "1st," "2nd," and "3rd or subsequent." In this case, the box for "3rd or subsequent" was checked. In addition, the "Third or Subsequent Technical Violation or Any Special Condition Violations" worksheet was completed.

Heart persisted in arguing, again, that the prior technical violations had not been proved because "[t]here is no testimony that those were technical violations, and if there had been testimony, there's no corroborating evidence of a certified order that they were technical" and that "in order for it to be classified as a third technical . . . there has to be some evidence that there are two prior." After the court again disagreed, Heart argued, "That's what the rule and the law requires, that those prior technicals actually be—you can't be here for a third technical violation without proof of the two previous technical violations, and there has been no evidence that the prior violations were technical violations."

Finally, at Heart's sentencing, the Commonwealth affirmatively relied on the guidelines worksheet for "Third or Subsequent Technical Violation," announcing the recommended sentencing range to the court before arguing for a lower sentence.

We find that the parties consented to the application of the new statute, after examining all of the circumstances. We start with the preparation of the guidelines under the new statute, which all parties received prior to the hearing and relied on throughout the hearing. Combining this with the lengthy argument about how to interpret and apply the new statute—an argument that all counsel participated in—the parties demonstrated their ongoing agreement to proceed under Code § 19.2-306.1. Indeed, before the pronouncement of the judgment, the Commonwealth agreed with the court on the record that the pending violation was for a "technical violation, third offense" and argued that whether the violations were technical was a matter for sentencing. Thus, there was "an agreement between the parties to proceed under the new statute." *Green*, 75 Va. App. at 84. To find otherwise would allow the Commonwealth to "approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Cody v. Commonwealth*, 68 Va. App. 638, 665 (2018).

B.  Code § 19.2-306.1 requires evidence of two prior technical violations before a defendant is sentenced for a third technical violation.

This appeal requires us to interpret and apply Code § 19.2-306.1.  In particular, we must determine what the statute means by a "third or subsequent technical violation"—whether this means a "technical violation" of probation preceded by two prior "technical violations" of probation, or if any other two prior violations will do.  "Under well-established principles, an issue of statutory interpretation is a pure question of law which we review de novo."  *Conyers*, 273 Va. at 104.

As always when interpreting a statute:

> [O]ur primary objective is "to ascertain and give effect to legislative intent," as expressed by the language used in the statute. "When the language of a statute is unambiguous, we are bound by the plain meaning of that language."  [If, however,] the language of the statute "is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute."

*Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (citations omitted).

Our duty is "to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal."  *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012) (internal quotation marks and citations omitted).  "We do not isolate particular words or phrases but rather examine a statute in its entirety."  *Colbert v. Commonwealth*, 47 Va. App. 390, 395 (2006) (internal citation omitted).

Whereas Code § 19.2-306(C) does not distinguish between types of violations, Code § 19.2-306.1 creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations.  The statute "contains specific limitations on sentencing that apply when a circuit court bases its revocation of a suspended sentence on what the statute refers to as certain 'technical violations' enumerated in the statute."  *Green*, 75 Va. App. at 75.

- 10 -

Code § 19.2-306.1 is divided into four sections.  The first paragraph defines "technical violation" to mean:

> [A] violation based on the probationer's failure to (i) report any arrest, including traffic tickets, within three days to the probation officer; (ii) maintain regular employment or notify the probation officer of any changes in employment; (iii) report within three days of release from incarceration; (iv) permit the probation officer to visit his home and place of employment; (v) follow the instructions of the probation officer, be truthful and cooperative, and report as instructed; (vi) refrain from the use of alcoholic beverages to the extent that it disrupts or interferes with his employment or orderly conduct; (vii) refrain from the use, possession, or distribution of controlled substances or related paraphernalia; (viii) refrain from the use, ownership, possession, or transportation of a firearm; (ix) gain permission to change his residence or remain in the Commonwealth or other designated area without permission of the probation officer; or (x) maintain contact with the probation officer whereby his whereabouts are no longer known to the probation officer.

Code § 19.2-306.1(A).

This paragraph concludes: "Multiple technical violations arising from a single course of conduct or a single incident or considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to this section."  *Id.*

The second paragraph directs a court to determine the "basis of a violation" and reinstitutes broad sentencing discretion where "the defendant was convicted of a criminal offense that was committed after the date of the suspension, or has violated another condition other than (i) a technical violation or (ii) a good conduct violation that did not result in a criminal conviction."  Code § 19.2-306.1(B).  In this circumstance, "the court may revoke the suspension and impose or resuspend any or all of that period previously suspended."  *Id.*

The third paragraph restricts a court's sentencing authority for technical violations:

> The court shall not impose a sentence of a term of active incarceration upon a first technical violation of the terms and conditions of a suspended sentence or probation, and there shall be a presumption against imposing a sentence of a term of active

- 11 -

incarceration for any second technical violation of the terms and conditions of a suspended sentence or probation. However, if the court finds, by a preponderance of the evidence, that the defendant committed a second technical violation and he cannot be safely diverted from active incarceration through less restrictive means, the court may impose not more than 14 days of active incarceration for a second technical violation. The court may impose whatever sentence might have been originally imposed for a third or subsequent technical violation. For the purposes of this subsection, a first technical violation based on clause (viii) or (x) of subsection A shall be considered a second technical violation, and any subsequent technical violation also based on clause (viii) or (x) of subsection A shall be considered a third or subsequent technical violation.

Code § 19.2-306.1(C).

Finally, the fourth paragraph provides that "[t]he limitations on sentencing in this section shall not apply to the extent that an additional term of incarceration is necessary to allow a defendant to be evaluated for" certain treatment programs. Code § 19.2-306.1(D).

In support of its position, the Commonwealth urges us to focus on a single line of the statute: "The court may impose whatever sentence might have been originally imposed for a third or subsequent technical violation." Code § 19.2-306.1(C). And it argues that "third or subsequent technical violation" means any third or subsequent violation of probation that is properly categorized as technical, no matter if the prior violations were technical or non-technical. More broadly, the Commonwealth argues that limiting a trial court's ability to impose a sentence of incarceration for a third, technical violation, following two more serious non-technical violations, would frustrate the intent of the legislature.

Even read in isolation, the Commonwealth's interpretation of "third or subsequent technical violation" is problematic, as it skates over the modifying word "technical." But it is our duty "to give effect, if possible, to every word of the written law." *Burnette v. Commonwealth*, 194 Va. 785, 788 (1953) (internal quotation marks omitted). Indeed, had the legislature intended the result the Commonwealth argues for, the statute would simply say, "The

- 12 -

court may impose whatever sentence might have been originally imposed for any third or subsequent violation."

Read in the context of the rest of the statute, we have no doubt that one cannot have a third technical violation without having two earlier technical violations during that same suspended sentence.[4]  Looking first to paragraph B, the statute directs a court to determine the "basis of a violation" and categorize it as a conviction for a new criminal offense, a technical violation, a good conduct violation that did not result in a criminal conviction, or a violation of "another condition."  If the violation is neither technical nor a good conduct violation not resulting in a criminal conviction, a court can impose or resuspend any of the period previously suspended.  But when a violation is technical, courts have no sentencing authority under this paragraph—no matter how many total violations have been committed during the scope of a probationer's sentence.

If a court determines that the basis of the violation was technical, paragraph C provides the only sentencing authority.  By setting out increasing potential penalties for a "first technical violation," a "second technical violation," and then for a "third or subsequent technical violation," the plain language of the text conclusively demonstrates that a probationer cannot have a third technical violation without first having two prior technical violations.  Only in this circumstance is the court authorized to "impose whatever sentence might have been originally imposed for a third or subsequent technical violation."  Code § 19.2-306.1(C).

---

[4] A sentence includes any original custodial term, the suspended portion of that term, and any subsequent periods of probation that tie back to the original conviction and sentence.  *See Canty v. Commonwealth*, 57 Va. App. 171, 179 (2010) ("Because the probation violation found in October 2008 was not itself a criminal conviction, the revocation and resuspension of Canty's suspended sentence in October was merely a modification of the original suspended sentence."); *United States v. Evans*, 159 F.3d 908, 913 (4th Cir. 1998) ("[T]he term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of the supervised release are all part of the original sentence.").

- 13 -

The final sentence of paragraph C reinforces this conclusion by creating a hierarchy within the categories of technical violations. Technical violations for failing to "refrain from the use, ownership, possession, or transportation of a firearm," and technical violations for failing to "maintain contact with the probation officer whereby his whereabouts are no longer known to the probation officer," must be immediately treated as second technical violations. Thus, the court would have authority to impose "not more than 14 days of active incarceration" the first time a probationer commits one of these technical violations. Then, "any subsequent technical violation" falling within the same two categories "shall be considered a third or subsequent technical violation" such that the court has authority to "impose whatever sentence might have been originally imposed."

In effect, the end of paragraph C emphasizes that certain technical violations are more serious, and therefore skip the "first technical violation" tier. For these violations, a probationer gets only one warning before facing the potential of a significant sentence. That the General Assembly chose to advance certain violations up the penalty scheme—but did not specify that a first technical violation following a non-technical violation should receive similar treatment—is telling.

The Commonwealth cannot point to any part of the text of the statute in support of its preferred interpretation. While the General Assembly could have given a court full sentencing authority for any third violation—even for something technical—it simply did not *use the language in the text of the statute* that would do so. Instead, if someone has a single positive drug screen, or fails to follow the instruction of a probation officer, the General Assembly restricted the court from imposing a term of incarceration even if the probationer had prior violations. Far from frustrating the intent of the General Assembly, this interpretation advances

- 14 -

the purpose behind the statutory changes, which was clearly to treat technical violations less harshly than non-technical violations.

Finally, this is not a case in which "a literal application would produce a meaningless or absurd result." *Saunders v. Commonwealth*, 48 Va. App. 196, 201 (2006) (quoting *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91 (1997)). In general, the "absurdity doctrine" requires "a disposition that no reasonable person could approve." *Absurdity Doctrine*, *Black's Law Dictionary* (11th ed. 2019). Because the gradual penalty scheme the General Assembly instituted for technical violations reflects the less serious nature of these violations, as well as the significant length of time many individuals spend on probation for a single sentence, we cannot say this literal interpretation renders the statute meaningless or absurd.[5]

> C. Because the Commonwealth did not present evidence that Heart's first two violations were technical violations, the court erred by sentencing him for a third technical violation.

We must reverse a sentence if it falls outside "the lawful boundaries of applicable sentencing statutes and constitutional limitations." *Du v. Commonwealth*, 292 Va. 555, 563 (2016). Because the Commonwealth produced no evidence that Heart had three technical violations, the lower court's six-month sentence fell outside the lawful boundaries of Code § 19.2-306.1(C).

The Commonwealth conceded on brief that "the Commonwealth did not produce evidence of the nature of Heart's two prior violations."[6] Indeed, the probation officer testified only generally as to the prior violations, and the two revocation orders in the record do not identify the basis for those revocations.

---

[5] Indeed, Heart's failure to report to his probation officer in early 2021 was more than ten years from his original offense (for which he received an active sentence of only seven months).

[6] Because of this concession, we need not address Heart's arguments about what evidence would be necessary to prove a prior violation was a "technical" violation.

Just as we do not assume any prior drug conviction qualifies for recidivist penalties under Code § 18.2-248, or that any prior felony offense qualifies for recidivist penalties under Code § 19.2-297.1, we cannot assume that a prior probation violation qualifies as "technical" without evidence of the same. *See Mason v. Commonwealth*, 64 Va. App. 599, 610 (2015) (Commonwealth must prove prior New York drug conviction was "substantially similar" to Virginia statute); *Dean v. Commonwealth*, 61 Va. App. 209 (2012) (concluding offenses of robbery in Virginia and Maryland were substantially different so a prior Maryland conviction did not qualify for a recidivist penalty). Thus, the sentence exceeds what the court could have lawfully imposed for a first technical violation.

> D. Heart's other assignments of error about the "guilt" phase of his revocation hearing are harmless or otherwise unnecessary for us to resolve.

While we started our analysis by examining the impact Code § 19.2-306.1 has on sentencing at a revocation hearing, a court only sentences a defendant for a violation of probation after first determining that a violation occurred. Code § 19.2-306(A) provides that "in any case in which the court has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence for any cause the court deems sufficient." A revocation proceeding must begin with "written notice of the claimed violations." *Price v. Commonwealth*, 51 Va. App. 443, 447 (2008) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). A defendant is then entitled to a hearing, which has two components. During the "guilt" phase, the court determines whether there is "good cause to believe that the defendant has violated the terms of suspension." Code § 19.2-306(C). If a court finds good cause that a violation did occur, the

- 16 -

court then has the option to "revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1."[7] *Id.*

Heart's first assignment of error concerns the "guilt" phase of the violation hearing. He argues that the court erred by admitting irrelevant evidence of Heart's pending criminal charges during this part of the hearing, because he was not alleged to have violated his probation by committing new offenses. Indeed, the only violation pending before the court was whether Heart had failed to follow the instructions of his probation officer and to report as ordered by that officer.

A ruling on "[t]he admissibility of evidence is within the broad discretion of the trial court," and we review the same for abuse of discretion. *Blain v. Commonwealth*, 7 Va. App. 10, 16 (1988). To the extent there was any error here, we agree with the Commonwealth that it was harmless because there "were other sufficient causes for the court to revoke." *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991) (finding that the admission of a probation officer's testimony about new convictions was harmless). Here, the trial court made clear in response to the objection that it was not considering whether the evidence amounted to a "condition one" violation for committing a new offense, and was instead only considering whether Heart committed a "technical violation."

Heart also assigns error to the court's denial of his motion to strike the evidence because of the Commonwealth's failure to prove that Heart had two prior technical violations. In essence, Heart argues that prior technical violations are elements that must be proved during the "guilt" phase of a revocation hearing. In support for this argument, Heart relies on the

---

[7] Amendments to Code § 19.2-306(C) took effect at the same time as Code § 19.2-306.1. Code § 19.2-306(C) requires courts to sentence according to Code § 19.2-306.1. The two statutes thus operate in tandem, meaning that the parties' consent to apply the new statutory framework encompasses both provisions.

similarities between the new Code § 19.2-306.1 and other statutes that set out enhanced recidivist penalties. We have generally treated prior convictions as elements of those offenses, and not mere sentencing enhancements. *See, e.g.*, *Mason*, 64 Va. App. at 599; *Dean*, 61 Va. App. at 209.

Because we conclude that the Commonwealth had to prove two prior technical violations before Heart could be subject to increased penalties under Code § 19.2-306.1, we need not, and do not, reach this issue.[8] If prior technical violations are comparable to "elements" that must be proved in the "guilt" phase, as Heart argues, Heart would remain responsible for the underlying first technical violation even if the Commonwealth failed to prove the prior violations. *See, e.g.*, *Turner v. Commonwealth*, 49 Va. App. 381, 386 (2007) (discussing fact that "DUI first offense, [is] a lesser-included offense" of "a warrant charging DUI second offense"); *Commonwealth v. Dalton*, 259 Va. 249, 253 (2000) (an offense is "a lesser-included offense of a charged offense" if "all its elements are included in the offense charged"). Whether prior technical violations are more comparable to elements or sentencing factors, the result here is the same—Heart must be resentenced for this first technical violation.

CONCLUSION

For the reasons set forth above, we reverse and remand for resentencing.

*Reversed and remanded.*

---

[8] The doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available." *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010) (quoting *Air Courier Conference v. American Postal Workers Union*, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)). In addition, a fundamental and longstanding precept of this doctrine is that "unnecessary adjudication of a constitutional issue" should be avoided. *Bell v. Commonwealth*, 264 Va. 172, 203 (2002). There are potential constitutional questions imbedded within Heart's argument about what must be proved at a probation violation hearing to trigger an enhanced sentence. *See United States v. Haymond*, 139 S. Ct. 2369 (2019) (plurality opinion) (suggesting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), applies to revocation hearings). Because Code § 19.2-306.1 is the first statute of its kind in Virginia, we have not previously addressed these issues and decline to do so here.